(Decided 1st July, 1874.)

JAMES ARMITAGE *vs*. SAMUEL SNOWDEN and others, Executors of HENRY KNELL, deceased, and others.

*Guardian and ward—Evidence sought to establish fraudulent Collusion between the Guardian and a third person to defraud the Wards, discussed— Wards' right of Election whether to take property wrongfully purchased by Guardian with their money, or to sue on the guardian's Bond—Admissibility of Evidence of a party to a suit taken prior to the Death of the adverse party under Acts of 1864, ch. 109 and 1868, ch. 116.*

A guardian used the money of his wards in the purchase and improvement of certain lots in the City of Baltimore, and becoming embarrassed he conveyed by an absolute deed to H. K. the property thus purchased upon a pretended consideration.   The guardian told H. K. at the time of the conveyance that he had purchased the property with the money of his wards,

and wanted to convey it to him to place it beyond the reach of his creditors, and for the purpose of securing it to his said wards. The property was afterwards sold by K. and the whole purchase money was paid to the guardian. A surety on the guardian's bond, was sued on said bond and compelled to pay moneys misappropriated by the guardian. On a bill filed by the surety to make K. liable for having under the circumstances of the case permitted the guardian to receive the purchase money of the property, it was HELD:

1st. That K. was not so liable.

2nd. That K's relation to the property was altogether different from that of a stranger, who unlawfully enters upon and receives the rents and profits of property belonging to infants, as here the property did not belong to the wards.

3rd. That the wards had a lien upon the property for the moneys used by the guardian in its purchase and improvement, and if the moneys thus used constituted the whole original purchase money, a Court of Equity would upon application have decreed it as belonging to them.

4th. That the infants had the election either to claim a lien upon the property for the moneys thus used by the guardian, or to sue his bond for a breach of his trust.

5th. That at the time the property was sold the guardian was still guardian, and as such entitled by law to receive all money belonging to his wards.

6th. That upon no theory could the liability of K. be maintained under the circumstances, except that of collusion with the guardian in committing a breach of his trust, and such theory was not sustained by the evidence.

7th. That proof of statements by K. made several years after he had sold the property and paid the purchase money to the guardian, to the effect that the guardian was a rascal, and had been embarrassed and conveyed this property to him, K. in order to place it beyond the reach of his creditors and to secure it to the children whose money he had used in its purchase and improvement, did not warrant the inference that K. *knew or had reasonable grounds to believe*, that when he paid said purchase money to the guardian the latter intended to commit a breach of his trust.

Where a party to a suit dies, the testimony of the adverse party taken prior to such death and admissible at the time it was taken, is not under the evidence Acts of 1864, ch. 109 and 1868, ch. 116, rendered inadmissible by such subsequent death.

APPEAL from the Circuit Court of Baltimore City.

This is an appeal from the decree of the Court below, dismissing the bill of complaint of the appellant. The facts of the case are sufficiently stated in the opinion of this Court.

The cause was argued before BOWIE, GRASON, MILLER and ROBINSON, J.

*Wm. A. Fisher* and *Charles Marshall*, for the appellant.

*Samuel Snowden*, for the appellees.

ROBINSON, J., delivered the opinion of the Court.

The appellant as surety on a guardian's bond, was obliged to pay the sum of $8613.41, on account of moneys *appropriated by the guardian to his own use.*

This bill is filed to recover of the appellees' testator, the money thus misapplied by the guardian, on the ground, that the testator *co-operated or colluded with the guardian in committing a breach of his trust.*

Conceding for the purposes of this case, that the testator would have been liable to the infant children, provided he knowingly aided the guardian in the misapplication or appropriation by him, of the trust funds; and further, that under such circumstances, the appellant, as surety on the guardian's bond, would have been entitled by *subrogation* to the rights and remedies of the infant children as against the testator, a question we are not to be understood as deciding, the testimony in the record is not sufficient, in our opinion, to entitle the complainant to the relief prayed.

It is proved beyond all doubt, that Haines the guardian, used the moneys belonging to his wards, in the purchase and improvement of certain lots in the city of Baltimore,

and that becoming embarrassed, he conveyed by an absolute deed to Knell, the testator, the property thus purchased upon a *pretended consideration* of $3700. It further appeared from the testimony offered on the part of the appellant, although denied by Haines and Knell in their answers, that Haines told Knell at the time of the conveyance, that he had purchased the property with moneys belonging to his wards, and wanted to convey it to him, Knell, in order to place it beyond the reach of his creditors, and for the purpose of securing it to the infant children.

The conveyance was made in 1861, and the legal title remained in the testator until 1866, when the property was sold, and *the whole purchase* money paid *to Haines, the guardian.* It is not pretended that Knell, the testator, ever received it, or in any manner appropriated to his own use, one dollar of the trust funds belonging to the wards, but it is contended that he is liable for having under the circumstances of this case, permitted the guardian to receive the purchase money of the property. But in this view we do not concur. Knell's relation to the property was altogether different from that of a stranger who unlawfully enters upon and receives the rents and profits of property belonging to infants. Here the property did not in fact belong to the wards. True, they had a lien upon it for the moneys used by the guardian in its purchase and improvement, and if the moneys thus used constituted the whole original purchase money, a Court of Equity would, upon application, have decreed it as belonging to them. On the other hand, however, the infants had the election, either to claim a *lien upon the property* for the moneys thus used by the guardian, *or to sue* his bond for a breach of his trust. Haines was permitted to remain as guardian, and no steps were taken to assert the lien upon the property. At the time the property was sold he was still the guardian, and as such entitled by law to receive all moneys belonging to his wards. On no theory, can

the liability of Knell be maintained under such circumstances, except that of collusion with the guardian in committing a breach of his trust. The evidence in support of this branch of the case rests mainly upon the testimony of the witness Mentzel, and the appellant himself, in regard to conversations had with Knell, the testator, *in* 1869, several years after the sale of the property and the receipt by the guardian of the purchase money. It seems that in these conversations Knell denounced Haines as a rascal, and said that in 1864, Haines was embarrassed and conveyed this property to him in order to place it beyond the reach of his creditors, and to secure it to the children, whose money he had used in its purchase and improvement. These statements were voluntarily made by Knell, and that too after suit had been brought against the appellant, as surety on the guardian's bond. Now, it can hardly be inferred from these declarations, that *he knew, or had reasonable grounds to believe* in 1864, when Haines received the purchase money, he intended to commit a breach of his trust. At that time not only was Haines the lawful guardian, but the appellant admits, that up to that time, and even for several years afterwards he had the most unbounded confidence in his honesty and integrity. But it is unnecessary to extend this opinion by a review at length of the testimony. It has been carefully considered and we are all agreed that it is insufficient to prove a *co-operation or collusion* on the part of Knell, the testator, with the guardian in the misapplication or appropriation by him of the moneys belonging to his wards.

The objection to the testimony of the appellant cannot be sustained. The admissibility of testimony depends upon the competency of the witness at the time he testifies, and cannot be affected by what may happen afterwards. When the testimony of Armitage was taken, Knell, the testator was alive, and under the Evidence Acts of 1864, chap. 109, and 1868, ch. 116, he was a competent witness.

The fact that Knell died before the hearing, cannot render the testimony thus taken inadmissible.

For these reasons the decree below will be affirmed.

*Decree affirmed.*

(Decided 1st July, 1874.)