## HAWKINS *v.* KERMODE.

1. Conflict in evidence and credibility of witnesses will be left as settled by the jury.
2. Matter of request to charge, sufficiently covered by the general charge.
3. Admissions of one of the parties to the suit, given in evidence by the other, need not be referred to specially in charging the jury, where no request to do so is made by either party.
4. Newly discovered evidence to prove more admissions similar to those already adduced, is cumulative in its nature, and will not entitle the losing party to a new trial.

April 14, 1890.

Evidence. Verdict. Charge of court. Admissions. New trial. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1889.

Mrs. Kermode sued Hawkins on six promissory notes, five for $100 principal and one for $50, each dated Nov. 7, 1883, and payable Dec. 25, 1884, and each expressing, as its consideration, real estate in the town of Bellwood. The defendant pleaded that he was to receive from plaintiff $500 for improving the place in Bellwood, whereas he had received but $325; that after the improvements had been made (describing them),

which was done in the spring of 1883, he agreed with plaintiff to purchase from her the Bellwood property for $700, upon which he was to be credited with the balance of $175 which she still owed him for these improvements, giving her his notes for the remainder of the purchase price, $525, but by mutual mistake he executed notes aggregating $550; and he prayed a credit for the error of $25.00. He further pleaded that the defendant was indebted to him $494.79 principal, and $69 interest, for improvements made in labor and furnishing material on property located on Richardson street in Atlanta, by her employment and paid out by him for her account. He attached an itemized account of these improvements, containing also various items of cash paid out by him for plaintiff at various times, and for insurance, shoes purchased for her, etc. This account runs from June, 1882, to a date in 1884 not specified. Upon the trial the plaintiff introduced the notes. The defendant testified, in brief, as follows : Early in 1882, he was employed by plaintiff to look after buying some real estate for her, and went to a good deal of trouble for this purpose. Finally, she decided to buy some vacant lots in Bellwood, and placed $900 in his hands, $500 of which was to pay for the Richardson street place, and for this place he paid also $5 for examination of titles. The deeds to both places were executed, and he carried them to plaintiff, stating to her the aggregate cost of the places, which was $850, leaving $50 in his hands, which she told him to keep for his trouble After these purchases were made, she desired him to improve the Richardson street place. He entered on this work in the summer of 1882, and was engaged upon it for a considerable length of time, but does not remember when he quit. He then detailed the work done upon this place, as set forth in the itemized account attached to his plea, and stated that he loaned

her various sums of money and also paid bills and made purchases for her at her request, as stated in the account. He identified certain receipts for various amounts, which were put in evidence, some of which were receipts to plaintiff and some to defendant. About March, 1883, he commenced improving her vacant lots in Bellwood, as desired by her, building two houses worth $225 each, which was the contract price between him and her, and also making various other improvements worth over $50, but $50 was all he got for it. He furnished all the material and did all the work. She had given him for the whole of this work at Bellwood $500, but of this amount he had loaned back to her $175. After this work was done, early in Nov., 1883, she proposed to sell him the Bellwood property for $700. Some months afterwards he lent her $175, and he was to have credit on this for the $175 and was to pay $525 in addition, but by mistake in the calculation made by him at the time, he executed notes for $550. Very soon afterwards they discovered the mistake, and she agreed that he should be credited with the $25, and also with $10 which he then loaned her. This transaction was with reference to the Bellwood property only, and the settlement for the work on the Richardson street property was left to be made afterwards. The latter was not considered by him or spoken of by her as being included or settled in this transaction, and he had never received any pay for work done at that place, or for any of the items stated in his account. At the time the notes were given, it was agreed between them that a settlement would soon after be made as to the Richardson street work, and that his account against her for such work should be credited against the notes, as the difference between them would not be much either way. In January, 1884, she stated to him that she would turn over all his notes to him if he would buy her a $40 set

of furniture, which he declined, saying that whenever a settlement was made, if he owed her anything he would pay it, and if she owed him anything she must do the same. A short time before this suit was brought, she sent for him to come to her house. She told him that she had married and he could settle the matters between them with her husband; this he declined to do. The time of maturity of the notes had passed some time before, and this was the first suggestion of a settlement he had had from her. He collected rents for her from the Bellwood houses at the rate of $12 per month, retaining $2 per month for repairs and his services, but never gave her a statement of his account against her. One Phillips testified that some time in 1883, after the improvements had been made on the Richardson street place, plaintiff said to him she was satisfied with the work and was indebted to defendant for it, and spoke of selling him some property in Bellwood in part payment for what she owed him for the work. This witness and various other carpenters gave estimates as to the value of the work done on the Richardson street place and, some of them, of the value of the work done on the Bellwood place, tending to sustain the testimony of the defendant. Two other witnesses for him testified that, early in 1883 or 1884, they heard plaintiff say that he made the improvements on the Richardson street place; that she owed him for them, was pleased with the work, and if it had not been for him, would have lost a great part of her property ; that she owed him between $250 and $300; that she did not know exactly how much, that he knew better than she did; that he was her agent; that she had borrowed money many times from him in small amounts, and could get money from him in this way at any time she wanted it. One of them testified to having seen her with a pair of shoes which she said defendant had given her, etc.

The plaintiff's husband testified that when defendant came to the house, it was in response to a request for him to come to settle; and that he did not deny owing the notes, but said he just wanted a short time more to pay them. Plaintiff testified that when the work had been done by defendant on the Richardson street place and the Bellwood lots, she moved to the Richardson street place, and the Bellwood houses were rented. Defendant turned over to her $10 per month for several months, for the Bellwood houses. Afterwards, to settle all matters between them, she agreed with him on a trade by which she was to sell him the Bellwood houses and lots, and he gave her his notes for $550 for the balance which he owed her on a settlement of all matters between them, including the Richardson street work. There was no mistake as to amount in the execution of the notes. She never made to Phillips, or in his presence, any such statement as he testified to, nor did she make any such statement as was testified to by other witnesses for the defendant. Whenever defendant bought anything for her, she gave him the money with which to pay for it, or gave it to her father who went with him. She never borrowed $175 from defendant at any time. In Nov., 1882, during the Richardson street work, she gave him $175, to pay him for his work and for materials used. She helped to do part of the Richardson street work herself. She gave him also $100 in Dec., 1882, to pay for work and material, besides the $500 which she gave him for the building of the Bellwood houses. Whenever he paid any taxes for her, she gave him the money. She never stated that she would give him his notes if he would get her a $40 set of furniture. He never furnished her with a bill for the Richardson street work, never proposed any settlement with her, and never claimed that

she owed him or that there was any mistake in the
notes.   At the time he came to her house, she told him
he could settle with her  husband, but he said his con-
tract was with her and he would settle with her, but he
made no proposition as to settlement and said he wanted
a little more time.   He told. her he had spent $175 of
his money on the Bellwood property, and would give
his notes for $550, and this would settle all matters be-
tween them.   They drew the notes and deed, and she
signed the deed.   He rented out this property up to the
time she sold it to him, he said for $10 per month, and
he paid her that, saying nothing about $2 per month
for repairing, etc.   She and other witnesses, carpenters,
testified as to the value of the work done on the Rich-
ardson street and the Bellwood property, their testi-
mony tending to show that the estimates and charges
of defendant and his witnesses were too large.

The jury found for the plaintiff $525 principal, with
interest and cost.   The defendant moved for a new trial
on the following grounds:

(1) Verdict contrary to law and evidence.

(2) Error in refusing to charge: "In considering the
question as to whether the notes were or were not given
in full settlement of all matters of indebtedness be-
tween the parties, you would be authorized to consider
the notes themselves, which are in evidence and which
you will have out with you, in connection with the
other evidence in the case."

(3) Error in failing to charge as to admissions of the
plaintiff in evidence;  such admissions being nowhere
referred to in the charge, nor were the jury instructed
that they were evidence to be considered by them in
the case.

(4) Newly discovered testimony.   In support of this
ground, the defendant produced the affidavit of Mrs.
Phillips to the effect that, when the carpenter work was

finished on the Richardson street house, plaintiff told her that defendant had done the carpenter work and she was well pleased with it, that she would be better satisfied with it if it was paid for, that she was afraid it would take all of her money to finish the house, that she would sell him the Bellwood property in part payment for his work, and that as soon as defendant was through with the work she would have him do other work for her. Also the affidavit of himself and counsel, to the effect that they did not know of this testimony until after the trial, though evidence had been diligently sought for.

The motion was overruled, and defendant excepted.

WEIL & GOODWIN, for plaintiff in error.

J. R. WHITESIDE, *contra*.

BLECKLEY, Chief Justice.

1. The dispute between these two parties is one of fact altogether. The evidence at the trial was conflicting, and the jury thought proper to settle the conflict in favor of the plaintiff below and against the plaintiff in error here. The presiding judge was satisfied with their finding, and we can see nothing in the record to warrant us in overruling his decision. Taking the evidence most strongly for the prevailing party, as we have to do, the verdict was neither contrary to evidence nor contrary to law.

2. The court's charge to the jury is set out in full, and it shows that, although the request to charge on the subject of looking at the notes in connection with the other evidence was not given in the language of the request, yet the matter was covered substantially and sufficiently by the charge as given, the court saying: "You, gentlemen, will look at all the evidence submitted to you, including, of course, the promissory notes themselves."

3. There was no request to charge upon the subject of admissions, and the omission to allude to them in the charge was not error in the absence of such request. The admissions we re simply a part of the evidence, and the jury would know that they ought to be considered for what they were worth, without being told so by the court. Why should this class of evidence have been singl ed out in the charge as the subject-matter of special mention and instruction? We can see no reason for so dealing with it, and doubtless none occurred to the mind of the court. There certainly is no rule of law which req uires that any particular part of the evidence shall be taken up and charged upon, without request to treat it in that special way. If the party introducing the admissions could complain of the court's silence in regard to them, so, it would seem, could the opposite party. And thus it would follow that there must be a general rule of law that admissions when introduced in evidence must always be the subject-matter of special notice by the court. We have never heard of any such rule, and unless there be such a rule, the court was not bound to give any charge on the subject in the present case. The general instruction to consider all the evidence was doubtless understood by the jury as a direction to consider the admissions along with the rest. Moreover, it is very unlikely that a jury would understand that admissions or anything else had been received in evidence except for the purpose of being considered by them in their deliberations upon the case. No doubt the trouble is, not that the admissions were not properly considered, but either that the jury believed they were never made, or if made, that they had a sense and meaning other than that attached to them by the witnesses who heard them.

4. The newly discovered evidence consists simply of more admissions of the same sort heard by another

witness. This evidence is cumulative in its nature, and there is no reason to think that it would produce a different result if a new trial were had. At least we are willing to abide by the opinion of the presiding judge upon that question, as well as upon all the others embraced in this motion for a new trial. If injustice has been done the losing party, it could only be attributed to the perjury of his adversary, in connection with his own imprudence in giving her several promissory notes for a considerable sum of money at a time when, according to his theory, he owed her, if anything, a much less amount. If the jury attached their faith to the wrong party, or the wrong side of the case, what remedy for their mistake can we afford? We are aware of none.

*Judgment affirmed.*