## WRIGHTSVILLE AND TENNILLE RAILROAD COMPANY *v* LATTIMORE.

1. The rules of diligence must be adjusted to the character of work in which the plaintiff is engaged.
2. Where one is employed in a work which necessarily involves more or less · danger, he assumes the risks ordinarily and usually incident thereto ; but he has no right to subject himself to unnecessary risks or unusual dangers, even when ordered so to do.
3. What a man of ordinary prudence would do when employed in dangerous work is the standard by which the law measures the diligence or negligence of other employees similarly engaged.
4. Where one engaged in dangerous work is directed by his superior to perform a given act, he may without negligence obey such direction, if the danger incident thereto is not unusual, nor the risk beyond that necessarily contemplated in his employment.
5. Where a train-hand is directed to assist in making a "running drill," his obedience will not render him guilty of contributory negligence, if the circumstances of making the uncoupling are such that a prudent man engaged in the same employment would assume the risk of such act.
6. There is a difference between issue and evidence, and the requirement that the judge shall instruct the jury as to all the issues raised does not impose on him the duty of singling out particular portions of the evidence and charging thereon.
7. In the absence of a special request the judge is not bound to instruct the jury as to the effect of an admission by either party to the record.
8. There was no error in the rulings of the court, or in the charge to the jury.

Argued July 14, — Decided August 14, 1903.

Action for damages.    Before Judge Evans.    Johnson superior court.   December 17, 1902.

*Daley & Bussey*, for plaintiff in error.
*Hardwick & Hyman*, contra.

LAMAR, J.    Lattimore was a train-hand.    He contends, that while the train was running at considerable speed he was standing on a flat car, and was ordered by the conductor to uncouple the cab for the purpose of making a "running drill;" that, while he

was leaning forward in the act of obeying the order, the conductor, who was standing on the cab, pulled out the pin and waved the engineer forward; that by reason of the jerk Lattimore lost his balance, and was thrown on the track and run over by the moving cab. The company insists that the verdict in his favor should be set aside, because, in view of the speed of the train, the act of uncoupling was dangerous; that Lattimore had no right to obey the order; and that the court erred in charging that the plaintiff would be at fault in obeying the conductor if the act of uncoupling was, under the circumstances, obviously dangerous.

The proper work of a brakeman is frequently dangerous; and if the mere fact of danger warranted him in refusing to obey, he would rarely be in position to comply with an order to couple, or to do many other acts in the line of his employment. He, however, assumes the usual risks of the business, and if injured therein, without fault on the part of the company or a fellow-servant, he can not recover from the railroad company. But while he may incur the usual and ordinary risks incident to the service, he can not assume unusual risks or expose himself to dangers out of the ordinary and then hold the master responsible, when injured by the act of a fellow-servant. He must be free from fault. Civil Code, §2323. For him to take unusual risks is to be at fault, even though he has done so under the immediate orders of his superior officer; for the conductor has neither express nor implied power to subject him to unusual risks, and the servant must decline to act in such cases. The rules of diligence must be adjusted to the particular service. In this, as in other instances, the man of ordinary prudence furnishes the standard by which the conduct of others is to be measured. If the danger of uncoupling in the particular instance be such that an ordinarily prudent man employed as a train-hand would decline to act, and wait for a safer and less hazardous opportunity, than all other train-hands acting under similar conditions must likewise refuse to act and wait for a safer time and place. No one has the right to expose himself to manifest dangers or to those of a kind or of a degree not contemplated in the employment. If the speed of the train, the difficulty of uncoupling, the state of the weather, the darkness of the night, the want of a lantern, the condition of the cars, the grade of the track, the brakeman's peculiar position on the car, or other circumstances be such as to involve

risks beyond those usually incident to the business, and which a brakeman of ordinary prudence would not incur, no other train-hand would be justified in exposing himself to such unusual risks, even if ordered so to do, by the conductor. The charge taken as a whole was in accordance with the views above expressed, and under it the jury evidently found that the speed was not too great for a prudent brakeman to undertake the task of uncoupling, and making the "running drill."

The company contended that Lattimore had admitted that he was injured through his own fault, and error is assigned because the court failed to present this material issue to the jury. The court is required to charge on the various theories of negligence raised by the evidence, but is not required to treat the evidence itself as an issue. The issue involved was whether Lattimore was at fault; not how that negligence was proved. Besides, the court is not required to charge on the effect of admissions without a special request to that effect. Civil Code, § 5189; *Hawkins* v. *Kermode*, 85 *Ga.* 116 (3); *Phœnix Co.* v. *Gray*, 113 *Ga.* 424, 431.

It is unnecessary to set out at length that part of the argument of counsel for plaintiff which was objected to, and on which a motion for a mistrial was made. It was, in substance, that corporations generally have no soul, and "he was satisfied from the evidence in this case that the same was true of the Wrightsville and Tennille Railroad Company." This argument was of the character which has been criticized by this court in several cases. See *W. & A. R. Co.* v. *Cox*, 115 *Ga.* 715, and cases there cited. But, under the peculiar circumstances here, we do not think it requires the grant of a new trial. It appeared in the evidence that the defendant had supplied the injured plaintiff with a physician, and rendered him other valuable services. From a note of the judge it also appears that the argument complained of was in answer to one by the company's attorney, in which he claimed that the defendant had been generous in its treatment to the plaintiff. Counsel for the plaintiff contended that there was other evidence in the case to show great want of consideration for the plaintiff, and in the course of this discussion he used the language above set out. Improper argument on the part of one counsel is no excuse for improper argument by his opponent; but here the contention was based on evidence, and that of the other is likewise founded

on the same and additional testimony.	Where, as in this case, the defendant put its character in issue, the plaintiff would be entitled to reply in kind.	Certainly no new trial can be granted, for the further reason that the contention that the language used was inflammatory was apparently not well founded.	The argument evidently did not influence the jury ; for the amount found was small in view of the serious character of the injuries.	If the discussion had any effect whatever, the railroad company evidently got the best of the argument in the reduction of the verdict.

*Judgment affirmed.	By five Justices.*