## BANKS *v.* BRADWELL, administrator.

1. Where the plaintiff is incompetent to testify as to conversations with a person since deceased, under whom the defendant claims, and another person is introduced who gives testimony as to such conversations, and subsequently the plaintiff dies, leaving this witness as an heir at law, who thus becomes interested in the result of the suit, and later the witness also dies, on a subsequent trial (a new trial having been granted, and the case proceeding in the name of the administrator of the plaintiff) the evidence given by the witness at the former trial is admissible.
2. It was erroneous to exclude certain evidence referred to in the second division of the opinion.
3. In the absence of an appropriate written request, there was no error in omitting to charge relatively to certain admissions relied upon by the plaintiff to· establish a resulting trust.
4. Where a trust would be implied from payment of the purchase-price of land with money furnished by'another person, a trust will be implied if, after receiving the money to buy the land, the recipient uses the money for other purposes, and, substituting his own money for that furnished to him, pays for the land, intending to make the payment for the other person.
5. The request to charge, set out in the fifth division of the opinion, perhaps intimated an opinion, but it embodied a correct principle of law applicable to the case.
6. The verdict was not demanded by the evidence. On another trial the defendant will have an opportunity of offering the alleged newly discovered evidence.

OCTOBER 2, 1913.

Equitable petition. Before Judge Pendleton. Fulton superior court. February 2, 1912.

This case has been before the Supreme Court on two occasions. *Killian* v. *Banks,* 103 *Ga.* 245 (29 S. E. 971) ; Id. 111 *Ga.* 850 (36 S. E. 635). Banks instituted proceedings to dispossess Killian of certain land, and Killian filed a suit to enjoin those proceedings, to cancel certain deeds under which plaintiff claimed, and to have title decreed to be in defendant. On the first occasion the Supreme Court decided that there was no abuse of discretion upon the part of the trial judge in refusing the injunction, and also that the judge properly rejected an affidavit of the plaintiff in the injunction suit on the ground that she was incompetent to testify; but in the course of the opinion it was said that under the allegations in the petition the defendant was not an innocent purchaser, and if plaintiff "can, by aliunde evidence, establish her claim to the satisfaction of the jury, she will be entitled to recover the whole property." On the second occasion, the plaintiff having recovered, this court refused

to interfere with the exercise of the judge's discretion in the first grant of a new trial. Subsequently the plaintiff died, and the case was ,prosecuted by the administrator on her estate. A second verdict was rendered against the defendant, who made a motion for new trial on the general grounds, and upon several special grounds which included exceptions to rulings on the admissibility of evidence, to the charge of the court, and to a refusal to charge on written request. The judge overruled the motion, and the movant excepted. The other material facts appear in the opinion.

*C. W. Smith, M. A. Hale,* and *R. B. Blackburn,* for plaintiff in error.

*Rosser & Brandon, Stiles Hopkins,* and *L. Z. Rosser Jr.,* contra.

ATKINSON, J. 1. The defendant was the widow of James Banks. She claimed a half interest in the land under a deed executed by James Banks to herself, and the other half interest by inheritance from James Banks, who died after the execution of the deed. The plaintiff was a sister of James Banks, and claimed by virtue of an alleged resulting trust; it being contended that she supplied the consideration to buy the land and requested James Banks to buy it for her, and that he made the purchase but took the deed in his own name. James Banks died before the suit was instituted. The plaintiff, being incompetent to testify as to conversations with the deceased James Banks, produced two other witnesses, one a niece and the other a nephew, to testify as to conversations with James Banks before his decease, wherein he was said to have made statements which, in effect, tended to support the plaintiff's theory of a resulting trust. Subsequently to the trial at which such testimony was given, the plaintiff died, leaving among her heirs at law the two witnesses who had delivered testimony as above indicated, who, by virtue of being heirs of the plaintiff, became interested in the recovery. Before another trial, however, both of these witnesses died. After their death, an administrator having been appointed to prosecute the case, another trial proceeded, which resulted in the verdict which formed the basis of the motion for new trial upon the overruling of which the present bill of exceptions was sued out. On the last trial the evidence delivered on the former trial by the two witnesses just mentioned was admitted over the objection that if such witnesses were in life they would be heirs at law of the plaintiff, now deceased, represented by the administrator, and would be

incompetent to testify as to conversations with the plaintiff's deceased husband, and, being dead, their evidence taken at the former trial was incompetent. There is no merit in this ground of the motion. Under the Civil Code, § 5773, the testimony of a witness since deceased, given under oath on a former trial upon substantially the same issue and between the same parties, may be proved by any one who heard it and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies. Under this rule the evidence was admissible. It was not thereafter rendered inadmissible under other rules as to the competency of witnesses to testify, as set forth in the Civil Code, §§ 5858 (par. 1, 4) and 5867. In par. 1 under § 5858 it is declared: "Where any suit is instituted or defended by a person insane at time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person, as to transactions or communications with such insane or deceased person," etc. In par. 4 under § 5858 it is declared: "Where a person not a party, but a person interested in the result of the suit, is offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent." These rules are directed against temptation of a witness to perjure himself, and were not intended to affect testimony which might have been delivered on some former trial when the witness was not incompetent, and which would be admissible under other provisions of law. After stating, in section 5858, that no person offered as a witness shall be excluded by reason of incapacity, for crime or interest, or from being a party, from giving evidence, etc., and that every person shall be competent and compellable to give evidence on behalf of either or any of the parties to the suit, except in certain instances as set forth in six separate subparagraphs, including 1 and 4 already quoted, it is declared, in section 5859: "There shall be no other exceptions allowed under the foregoing paragraphs." None of the paragraphs purport to render inadmissible testimony of a witness since deceased, which was delivered on the former trial.

2. The deed which James Banks took in his own name to the land in dispute was executed in 1870 and recorded in 1872. The deed from James Banks to his wife (the defendant), conveying an

undivided half interest in the property, was executed in 1871. In 1889 James Banks erected six houses on the property, and died in 1893 while residing in one of the houses. Before the houses were constructed Mrs. Killian resided in a small house on the same lot, and continued to reside there until institution of suit, several years after the death of James Banks. On the trial the defendant offered in evidence certain joint promissory notes, executed by herself and James Banks in 1889, payable to a third person, and certain mortgages on the land in dispute to secure the same, which notes and mortgages had been paid off and canceled. In connection with such evidence the defendant offered to testify, that the houses were constructed on the property by James Banks, that the notes and mortgages were given for building the houses, that a large portion of the debt was paid by the defendant after the death of James Banks, and that defendant expended specified sums in building and repairing fences and the like, while the plaintiff was living on the property. The notes and mortgages were rejected, and the defendant was not permitted to testify as just indicated. Error was assigned upon this ruling. James Banks and his wife were residing on the land at the time the notes and mortgages purported to have been signed, and remained in possession until the death of James Banks. After that event Mrs. Banks continued to reside on the land until the suit was instituted. During the entire period Mrs. Killian also resided on the land but in a separate house, and was cognizant of the improvements placed thereon by James Banks. The plaintiff's case depended upon the establishment of a resulting trust. It was the theory of the plaintiff that the possession of Banks during his lifetime, and that of his wife afterwards, were subordinate to the title of the plaintiff, by reason of the fact that the land had been purchased by James Banks for Mrs. Killian, and paid for with her money under circumstances which raised an implied trust, and that during his lifetime he regarded his possession as that of Mrs. Killian, and after his death Mrs. Banks continued in possession merely as his representative. The evidence relied on, to establish the resulting trust, consisted almost entirely of parol admissions and declarations, upon the part of James Banks, to the effect that he bought the land for Mrs. Killian and paid for it with her money, and that he intended to make a deed to her. Under these circumstances, evidence that after having conveyed a half

interest in the land to his wife, he, with her, executed notes for a large amount, secured by mortgages on the property, and thereby procured money, and with it made valuable improvements on the property, would tend to explain the character of their possession, and to that extent rebut the theory of the plaintiff's case. Such evidence would be in the nature of declarations favorable to themselves; but declarations of that character are admissible for the purpose of explaining possession. *Hansell* v. *Bryan,* 19 *Ga.* 167, cited and applied in *Drawdy* v. *Hesters,* 130 *Ga.* 161 (60 S. E. 451, 15 L. R. A. (N. S.) 190). See also *Smith* v. *Haire,* 58 *Ga.* 449.

3. Complaint is also made on the ground that the judge did not caution the jury and charge them fully relatively to certain admissions by James Banks, proof of which was relied upon by the plaintiff to establish a resulting trust. There was no request for instruction upon this subject, and under the circumstances the omission to charge was not erroneous. *Hawkins* v. *Kermode,* 85 *Ga.* 116, 123 (11 S. E. 560).

4. It was alleged that the plaintiff, through her agent James Banks, sold a lot on Davis street, and out of the proceeds bought the land in dispute, hereinafter referred to as the Bellwood property, to which it was intended that title should be taken in the name of the plaintiff, but without her knowledge or consent it was taken in the name of James Banks. Both transactions involved the extension of credit, and considerable time intervened in each instance before the deeds were executed. The Davis street lot was never conveyed to the plaintiff, though she paid for it and resided on it, but was conveyed, by the person from whom she bought, directly to the person to whom she sold, James Banks representing plaintiff in both transactions and collecting the money for which the property was sold. There was evidence of declarations and admissions by James Banks, tending to establish these allegations. There was also evidence to the effect that when James Banks bought the land in dispute he paid a part of the price and gave his notes for a series of deferred payments which he met as he drew his monthly wages. The witness who testified to this effect also testified that the lot purchased cost less than the price obtained for the lot sold, and that James Banks stated that he used "the balance of the money," and that he bought the land in dispute for plaintiff

"with her money." The judge was requested to charge: "If you believe from the evidence that James Banks in his lifetime contracted in his own name for the purchase of the property referred to in the petition as the Bellwood property, and now being sought to be secured by the plaintiff, and at the date of the purchase ·paid a small cash payment and delivered to the seller, Seago, his promissory notes for the deferred payments, and, after paying the notes so executed by himself, took a deed to himself from Seago, then and in that event no trust could be claimed to exist in so far as this transaction is concerned, and the plaintiff could not recover; and this would be true nevertheless you believe from the evidence that he, Banks, did hold the property alleged to have been purchased from Hayden in trust in Mrs. Killian, and the alleged admissions made by Banks in reference to how he held the property purchased by him from Seago would not be considered by you. In other words, I charge you that if you believe from the evidence that Banks purchased the property from Seago in his own right, and, at the time of such purchase, none of the money of Mrs. Killian entered into the purchase-price of the property sought to be recovered from this defendant, then I charge you that any admissions made by Banks that he held the property so purchased for his sister, Mrs. Killian, would not be binding either upon Banks or any one claiming under him, and it will be your duty to find for the defendant." It was alleged in the motion for new trial that this charge should have been given, because it was a statement of the law directly applicable and pertinent to the issues involved. The charge was not given as requested, but the judge instructed the jury as follows:

"If one person holds the title to property and another person has paid the purchase-money and has, therefore, a beneficial interest in the property, the law implies a trust, and the person who holds the legal title holds it as trustee for the beneficiary. If you find in this case that James Banks, acting as the agent for Mrs. Killian, bought the Bellwood property and paid for it with Mrs. Killian's money, and took the title to himself, the plaintiff in this case would have the right to recover. If you find that James Banks did not represent Mrs. Killian or did not buy the Bellwood property with Mrs. Killian's money, but bought it with his own money and paid for it with his own money and took the deed to himself, the plain-

tiff in this case can not recover. It is not necessary, gentlemen, that the identical money, the identical bills or the identical coin, which James Banks may have received as the money of Mrs. Killian, should have been used in payment for this property; but it must have been Mrs. Killian's money. To illustrate: Banks received $600, or other sum, for Mrs. Killian, as her money, to be used in the purchase of the Bellwood property, and, to further illustrate, he put it in the bank where he had other money, and drew a check upon the general account, and that check was paid, that would be paying with Mrs. Killian's money; so, if he had the money and kept it or mixed it with his own money, and he paid for the Bellwood property with money that was partly his and partly Mrs. Killian's by reason of it having been mixed, why that would be paying with Mrs. Killian's money. Now these are merely intended as illustrations, and not to tell you anything that there is in the evidence in this case with reference to these facts, but simply to illustrate. I have stated to you that it must be the money of Mrs. Killian that paid for this property; that is subject to this qualification: If the money of Banks was substituted for the money of Mrs. Killian, that is to say, if Banks received money that belonged to Mrs. Killian, for the purpose of paying for the Bellwood property, but he did not use that money in paying for the Bellwood property, but kept it or used it for other purposes, for his own purposes, and thus intending to substitute his own money for the payment of the Bellwood property, intending thereby to carry out the instructions which he had received from Mrs. Killian, and he substituted his money for the money of Mrs. Killian in paying for the property, then the trust would attach to that money and to the property which it purchased, and the plaintiff would have the right to recover in this case. But if he had no such purpose, if he received the money of Mrs. Killian and did not use it to pay for this property, but used it or kept it for other purposes and paid for this property with his own money, intending to take the title to himself, his own purchase, then the plaintiff in this case could not recover, although you may believe that he had the money to pay for it and ought to have paid for it with that money; but if he did not and did not intend to substitute his money, to make the purchase for her account, then she could not recover in this case."

It thus appears that in substance the court instructed the jury

as requested, except that he informed them that it was not essential to the creation of a trust that Banks, in purchasing the property in dispute, must have used the particular money received by him for plaintiff, but, having received money for plaintiff for the purpose of buying the property, it would suffice if he devoted that money to some other use and substituted therefor his own money, intending at the time of making the substitution to employ it for the benefit of the plaintiff in making the purchase for her. There was also an exception to the latter part of the charge as given, which is quoted above, on the grounds: (*a*) that there was no evidence to support it; (*b*) that even if Banks received the money of the plaintiff to invest in the property, but used it otherwise and paid for the property in dispute out of his own money, no trust could be implied, but the misuse of the money would be a matter of indebtedness between the plaintiff and Banks; and (*c*) that no trust could be implied unless the money of plaintiff was actually invested in the property. Construing together the request and the charge as given and the criticism upon each ruling of the court, when boiled down to the last analysis, the point for decision is whether there would be a resulting trust if Banks in making the purchase did not use the identical money which he received for plaintiff to be invested in the property. The judge in effect told the jury that it was not essential to the existence of the trust that the identical money received by James Banks for the plaintiff in the sale of the Davis street lot should have been paid for the Bellwood property, but that it would suffice if, having received money of the plaintiff and used it himself, he substituted his own money therefor, intending it for the plaintiff, and paid it for the Bellwood property on account of a purchase which he had made for her. Substituting money under these circumstances would amount to repayment by him of money which he had used, and the purchase of property with it for her would be a purchase for the plaintiff with her own money, though not the identical money which in the first instance he had received for her. After such purchase, nothing further appearing, James Banks, taking title in his own name, could not in equity and good conscience hold it against plaintiff, and a trust would be implied. Civil Code, §§ 3739, 3780. See also Wolfe *v.* Citizens Bank (Tenn.), 42 S. W. 39 ; Rarick *v.* Vandevier, 11 Colo. App. 116 (52 Pac. 743). There was evidence to authorize the charge which was given. There was no error in refusing to

charge as requested, nor any error in the charge of which the defendant can complain.

5. The judge refused a written request to charge the following: "The plaintiff claims, among other things, that James Banks, the husband of the defendant in this case, after purchasing the property in dispute from Seago, and while in possession of the same, admitted that this property was the right and property of his sister, Mrs. Killian, and that he, Banks, had paid for it with the money of Mrs. Killian. Now, if you believe from the evidence that these admissions are true and were made at the time at which the said Banks was the owner of the property, then I charge you that such admissions would be binding upon Banks or any one holding under him; but if, on the other hand, you believe from the evidence, that Banks, in his lifetime, disposed of any part of the property in dispute, and that the title to the property or any part of the same had passed out of Banks prior to the time at which he is claimed to have made such admissions, then and in that event the admissions would not be binding, and would not affect the interest in the property that had passed out of Banks prior to the time at which such admissions are said to have been made; and I charge you that if you find from the evidence that James Banks at any time disposed of the property or any part of it, by gift or otherwise, then the burden would be on the plaintiff to establish that the admissions relied upon, if any, were made by Banks before the title to the property had passed out of him." While this request is perhaps subject to criticism, in that the use of the words, "owner," and "disposed of part of the property," and "title to the property passed out of him," might tend to intimate that as a matter of fact Banks at one time held the title to the property in his own right, the principle of law contained in the request was pertinent to the facts of the case, and on another trial should be given in charge; care being taken to couch it in such language as will eliminate any possible expression of opinion by the court as to the ownership of the property. *Howard* v. *Snelling,* 32 *Ga.* 195-203; *Shields* v. *Blanchard,* 74 *Ga.* 805; *Marion* v. *Hoyt,* 72 *Ga.* 117; 16 Cyc. 992; 5 Michie's Dig. Ga. R. 320, 334.

6. The ruling announced in the 6th headnote does not require elaboration.

*Judgment reversed. All the Justices concur, except Beck, J., dissenting, and Lumpkin, J., disqualified.*

FISH, C. J., and EVANS, P. J., specially concurring. We concur in the judgment, and also in the opinion except so much as relates to the ruling upon the competency of the evidence of witnesses delivered at a former trial, but who died since that trial; it appearing that if the witnesses had been living they would have been disqualified from testifying against the estate of a deceased person, on the ground of interest.

BECK, J., dissenting. I do not think that the exceptions to the rulings made pending the trial nor those complaining of the charge to the jury show any material error.