BURKE et al. v. HORTH (COLUMBINE OIL CO., et al., Interveners).

(District Court, D. Wyoming. October 26, 1923.)

No. 1162.

Witnesses ⊜⟶175(I)—Testimony of party, competent when taken, not rendered incompetent by subsequent death of adverse party.

Comp. St. Wyo. 1920, § 5807, made applicable to the federal courts in that state by Rev. St. U. S. § 858, as amended (U. S. Comp. St. § 1464), and providing that "a party shall not testify where the adverse party is * * * an executor or administrator * * * of a deceased person," will not be extended to render incompetent the testimony of a plaintiff, taken in open court when the defendant was living and present, because of the subsequent death of defendant, not having testified, and the revival of the suit against his executor.

In Equity. Suit by M. B. Burke and the Eclipse Oil Company against Ralph Horth, executor of the will of Robert Taylor, deceased, wherein the Columbine Oil Company and the Ohio Oil Company became intervening defendants. On motion by defendants to exclude testimony. Denied.

N. E. Corthell, of Laramie, Wyo., John R. Smith, of Denver, Colo., and H. H. Schwartz, of Casper, Wyo., for plaintiffs.

R. N. Matson and A. C. Campbell, both of Cheyenne, Wyo., and A. M. Gee, of Casper, Wyo., for defendants.

KENNEDY, District Judge. This is a suit in equity, in which the plaintiffs seek to impress a trust in their favor upon a certain oil and gas lease issued by the Department of the Interior on certain lands in the state of Wyoming, under the Act of February 25, 1920 (41 Stat. 437). This memorandum is not in decision upon the merits of that case, as that is now under advisement by the court, awaiting briefs of counsel.

The matter herein treated arises out of the following circumstances. Issues were joined in this suit and the final hearing begun on May 28, 1923, at which time it continued for four days. At the expiration of that time, and while still in the midst of trial, the defendant Taylor died, and before he had testified in the cause. The progress of the trial was halted, and subsequently revived at the instance of the representatives of the defendant, and his executor substituted as the defendant in the case. At the trial the plaintiff Burke and one Smith, who was an original lessee of the defendant, 'and under whom the plaintiffs claim, testified as to certain personal conversations with the deceased touching the rights of the parties under the lease in controversy. After the revivor and substitution, the defendants presented their motion to exclude from the evidence all that portion of the testimony of Burke and Smith which related to personal conversations with the deceased, Taylor. This motion is now before the court for consideration.

The basis of defendants' motion is the statute which precludes a party from testifying when his adversary is an executor or adminis-

trator, and defendants contend that the testimony in this case logically falls within the rule. On the other hand, it is contended by plaintiffs that the testimony sought to be excluded does not fall within the rule or statute, and that it should be retained as a part of the record. The original common-law rule made the testimony of all parties in interest inadmissible, but this rule has been largely, if not entirely, abrogated by statute, which is true in our state. The rule or statute which governs the federal courts with respect to the competency of witnesses has been laid down by congressional enactment in the following language:

"The competency of a witness to testify in any civil action, suit, or proceeding in the courts of the United States shall be determined by the laws of the State or Territory in which the court is held." U. S. Comp. St. § 1464.

It will thus be seen that the statutes of Wyoming upon this particular subject govern this court in passing upon the matter before it. The common-law rule heretofore referred to is no longer in force in this state, as the general statute governing the competency of witnesses reads as follows:

"All persons are competent witnesses, except those of unsound mind and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Comp. St. Wyo. 1920, § 5804.

The statute, however, which has a direct bearing upon the question here involved, is as follows:

"A party shall not testify where the adverse party is the guardian or trustee of either a deaf and dumb or an insane person, or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee or legatee of a deceased person, except," etc. Comp. St. Wyo. 1920, § 5807.

The exceptions enumerated in the above statute, and not here quoted, have no bearing upon the question here. Unfortunately, perhaps, for this court, the Supreme Court of our state has not been called upon to construe the above-quoted statute in the light of circumstances which here appear. The question is discussed by many of the text-writers, and has also been passed upon by various courts, but unfortunately their rulings do not appear to be in harmony, so that it devolves upon this court to select a rule which shall at least stand as the rule in the case at bar until some higher court shall otherwise decree. It may be said that nearly all, if not all, the text-writers adopt the view contended for by counsel for plaintiffs in this case, along with perhaps a majority of the state courts, while some of the state courts sustain the contention of counsel for defendants.

So far as I have been able to make research, the federal courts hold that the evidence should stand. In the case of Vattier v. Hinde, 7 Pet. 252, 265, 8 L. Ed. 675, Chief Justice Marshall, in delivering the opinion of the court, uses the following language:

"The new parties plaintiffs are the representatives of Belinda Hinde, an original plaintiff, and the proceedings are revived in their names, by the order of the court, on their bill of revivor. Under such circumstances, the settled practice is to use all the testimony which might have been used had no

abatement occurred. The representatives take the place of those whom they represent, and the suit proceeds in its new form, unaffected by the change of name."

There is no indication that the Chief Justice in that case was attempting to establish a rule in the light of any particular statute, but the decision probably points to what the rule was in the absence of statute. The question was before the United States Circuit Court for the Northern District of Ohio in form substantially as presented here, which it appears from that case was construed under section 858 of the United States Revised Statutes, as it stood before the amendment in the year 1906, quoted above. Section 858, as then in force, was as follows:

"In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried: Provided, that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transaction with or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party or required to testify thereto by the court. In all other respects, the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty."

This statute seems to have been enacted subsequent to the opinion in Vattier v. Hinde, supra, the first enactment of the statute appearing to have been in 1862, while the decision of the Supreme Court was rendered in about 1833. The Ohio federal court in disposing of the point in Sheidley v. Aultman (C. C.) 18 Fed. 666, uses the following language:

"This raises a question of practice in our national courts of considerable importance. The rule in chancery is that if the testimony was competent when the deposition was taken and filed, it remained competent, and the subsequent death of the party does not affect its use in the trial; that the administrator merely takes up the case as it stood when the intestate party died. 2 Abb. Pr. p. 707, § 208; Vattier v. Hinde, 7 Pet. 252. I do not think the statute cited changes this rule of equity."

The United States Circuit Court for the Northern District of Ohio, with Judge Lurton sitting as Circuit Judge (afterwards Associate Justice of the Supreme Court), expresses his views in the case of McMullen v. Ritchie (C. C.) 64 Fed. 253, 266, in the following language:

"Upon the argument of the case, a general objection was entered by the executors of Cornell to any evidence of Mr. Ritchie as to any transaction or conversation with Mr. Cornell. It seems to me that this objection is not well taken. Mr. Ritchie was first examined as a witness by the complainants on the 31st of May, 1892. In the deposition which he then gave, he substantially stated the same facts elicited more than two years afterwards, in another deposition. When he was first examined by the complainants, Mr. Cornell was alive, and a party to this litigation. Mr. Ritchie was therefore, when he then testified, a competent witness as to this transaction. In June, 1892, Mr. Cornell died, and the suit was revived in the name of his executors, who thereafter interposed the objection heretofore mentioned. I am of opinion that, inasmuch as Mr. Ritchie was a competent witness at the time that the complainants took his proof in regard to the very matter now under consideration, the deposition thus taken is competent testimony for all purposes. It was

possible for Mr. Cornell to have given his own deposition in reply. He did not do so at once, and died within perhaps six weeks or two months thereafter, and before testifying in the case. My opinion is that Mr. Cornell's misfortune, whereby he was ultimately deprived of an opportunity of denying Mr. Ritchie's statements, ought not to, and does not, affect the competency of evidence that should be tested as of the time when the evidence was taken. 'The intermediate incapacitation of a witness, therefore, does not exclude his deposition taken when he was competent.' 1 Whart. Ev. § 477; Bingham v. Lavender, 2 Lea, 48; McDonald v. Allen, 8 Baxt. 446."

In 40 Cyc., at page 2270, the rule is broadly stated in the following language:

"Where a witness was competent at the time of testifying, his evidence cannot be stricken out as incompetent because of the subsequent death of a party."

Few of the text-writers however, have devoted much space to the general discussion of the fundamental principles underlying the enactment of statutes making testimony under the circumstances as found in this case, incompetent. It remained for Professor John Henry Wigmore, in his second edition of Wigmore on Evidence, at section 578, to discuss quite fully this question, which he does in the following forceful language:

"In almost every jurisdiction in the United States, by statutes enacted in connection with or shortly after the statute removing the general disqualification by interest, an exception was carved out of the old disqualification and was allowed to perpetuate within a limited scope the principle of the discarded rule. The scope of this modern rule excludes the testimony of the *survivor of a transaction with a decedent*, when offered against the latter's estate. It does not appear that there was any precedent which could have served as an example; and the almost universal vogue of this modern fragment of the old anomaly is therefore the more remarkable. The defenders of this rule are usually content to invoke some vague metaphor in place of a reason, but occasionally there is found an attempt at a rational justification:

"1873. Brickell, J., in Louis v. Eaton, 50 Ala. 471: 'This right and privilege (of testifying) must be mutual. It cannot exist in one party and not in the other. If death has closed the lips of the one party, the policy of the law is to close the lips of the other.'

"1878. Haymond, J., In Owens v. Owens, 14 W. Va. 88, 95: 'The law in the exception to the privilege to testify was intended to prevent an undue advantage on the part of the living over the dead, who cannot confront the survivor, or give his version of the affair, or expose the omission, mistakes, or perhaps falsehoods of such survivor. The temptation to falsehood and concealment in such cases is considered too great to allow the surviving party to testify in his own behalf. Any other view of this subject, I think, would place in great peril the estates of the dead, and would in fact make them an easy prey for the dishonest and unscrupulous.'

"The argument of the latter passage that a contrary rule 'would place in great peril the estate of the dead' sufficiently typifies the superficial reasoning on which the rule rests. Are not the estates of the living endangered daily by the present rule, which bars from proof so many honest claims? Can it be more important to save dead men's estates from false claims than to save living men's estates from loss by lack of proof? The truth is that the present rule is open, in almost equal degree, to every one of the objections which were successfully urged nearly a century ago against the interest rule in general. Those objections may be reduced to four heads: (1) That the supposed danger of interested persons testifying falsely exists to a limited extent only; (2) that, even so, yet, so far as they testify truly, the exclusion is an intolerable injustice; (3) that, no exclusion can be so defined as to be rational, consistent, and workable; (4) that in any case the test of cross-examination and the other

safeguards for truth are a sufficient guaranty against frequent false decision. Every one of the first three objections, applies to the present rule as amply as to the old and broader rule. The fourth applies with less apparent force, because the opponent's testimony is lacking in contradiction. And yet upon what inconsistencies is based even this support for the rule! For its defenders in effect declare the lack of this opposing testimony to be the sole ground for an exceptional rule adapted to that particular situation, and yet, since the deceased opponent is a party, he would have been by hypothesis a potential liar equally with the disqualified survivor; so that the rule rests on the supposed lack of a questionable species of testimony equally weak with that which is excluded. There never was and never will be an exclusion on the score of interest which can be defended as either logically or practically sound. Add to this the labyrinthine distinctions created in the application of the complicated statutes defining this rule, and the result is a mass of vain quiddities which have not the slightest relation to the testimonial trustworthiness of the witness.

"1895, Corliss, J., St. John v. Lofland, 5 N. D. 140, 64 N. W. 930: 'Statutes which exclude testimony on this ground are of doubtful expediency. There are more honest claims defeated by them, by destroying the evidence to prove such claim, than there would be fictitious claims established, if all such enactments were swept away and all persons rendered competent witnesses. To assume that in that event many false claims would be established by perjury is to place an extremely low estimate on human nature, and a very high estimate on human ingenuity and adroitness. He who possesses no evidence to prove his case, save that which such a statute declares incompetent, is remediless. But those against whom a dishonest demand is made are not left utterly unprotected, because death has sealed the lips of the only person who can contradict the survivor, who supports his claim with his oath. In the legal armory, there is a weapon whose repeated thrusts he will find it difficult, and in many cases impossible, to parry if his testimony is a tissue of falsehoods—the sword of cross-examination. For these reasons, which lie on the very surface of this question of policy, we regard it as a sound rule to be applied in the construction of statutes of the character of the one whose interpretation is here involved, that they should not be extended beyond their letter when the effect of such extension will be to add to the list of those who the act renders incompetent as witnesses.'

"1921, Mr. Harry W. Taft, 'Comments on Will Contests in New York,' 30 Yale Law Journal, 593, 605: 'This restriction not infrequently works intolerable hardship in preventing the establishment of a meritorious claim. Furthermore, it has been enforced with the most rigorous literalness, and has been the occasion of a labyrinth of subtle decisions. A long experience leads me to believe that the evils guarded against do not justify the retention of the rule. In the early development of our jurisprudence the testimony of all interested witnesses was excluded; but experience gradually led to the conclusion, that the restriction should be relaxed and more reliance should be placed upon the efficacy of our process of investigating truth. Cross-examination, for instance, has been found to be well calculated to uncover a fraudulent scheme concocted by an interested party and where that has failed the scrutiny to which the testimony of a witness is subjected by the court and by the jury, has proven efficacious in discovering the truth, to say nothing of the power of circumstantial evidence to discredit the mere oral statement of an interested witness.'

"As a matter of policy, this survival of a part of the now discarded interest disqualification is deplorable in every respect; for it is based on a fallacious and exploded principle, it leads to as much or more false decision than it prevents, and it encumbers the profession with a profuse mass of barren quibbles over the interpretation of mere words. If any concession at all is to be made to the consideration of caution underlying the rule, there are three simple ways available, each of them in actual and tried operation, and each of them able to accomplish the purpose without following the crude, technical, and unjust method of disqualifying surviving witnesses. One of these, adopted in Oregon, New Mexico, and Canada, is to allow no recovery in such cases on the party's

sole testimony, without corroboration of some sort. The second, followed in Connecticut, Virginia, and Oregon, is to admit, as well as the surviving party, any extant writings or declarations of the deceased party on the subject in issue. The third, invented in New Hampshire, except when it 'appears to the court that injustice may be done without the testimony of the party.' This removes the arbitrary feature of the rule and gives flexibility."

This discussion by Wigmore fully expresses the relationship of the statute, such as we have before us, to the original common-law rule of disqualification on account of interest. A number of state court authorities sustaining the competency of such testimony are Landham v. State, 12 Ala. App. 46, 68 South. 504, 509; Rio Grande v. Campbell, 55 Colo. 495, 136 Pac. 68, Ann. Cas. 1914C, 573; Banks v. Bradwell, 140 Ga. 640, 79 S. E. 572; Armitage v. Snowden, 41 Md. 119, 121; Strickland v. Hudson, 55 Miss. 235; Marlatt v. Warwick, 18 N. J. Eq. 108; Moore v. Hamilton, 44 N. Y. 673; Hay's Appeal, 91 Pa. 265, 268; Keran v. Trice, 75 Va. 690; Neis v. Farquharson, 9 Wash. 508, 37 Pac. 697. Some of the leading authorities cited by defendants in support of their contention are the following: St. Clair v. Orr, 16 Ohio St. 220; Smith v. Billings, 76 Ill. App. 454, affirmed 177 Ill. 446, 53 N. E. 81; Boyd v. Gore, 143 Wis. 531, 128 N. W. 68, 21 Ann. Cas. 1263; Newman's Adm'r v. Blades (Ky.) 54 S. W. 849; Quick v. Brooks, 29 Iowa, 484; Zane v. Fink, 18 W. Va. 693. To this list should undoubtedly be added the case of Owens v. Owens, 14 W. Va. 88.

Undoubtedly the best argument for the rule contended for by defendants is found in the opinion of the Illinois Court of Appeals in Smith v. Billings, supra, as the author of that opinion attempts to lay down what he conceives to be the reason for the enactment of the statute and why it should be construed as to exclude testimony when it appears in the manner as in the case at bar. The view of that court, after a discussion of the cases which take a contrary view, is substantially epitomized in the following paragraph:

"The reasoning of all these decisions is that the proper test is the competency of the witness at the very time the testimony is taken, whether by deposition or examination in open court. They hold that, if the witness be competent at the time he testifies, his competency cannot be affected by the subsequent death of the adverse litigant. It would seem that this reasoning is based upon analogy to the doctrine of the common law that, when a witness is made incompetent by reason of interest (under the common-law rule making parties in interest incompetent), yet the testimony of such witness, taken before his interest existed, is competent. The common-law rule incapacitating an interested witness is based upon his supposed bias. The only objection to the testimony of an interested witness being his supposed bias, the reason of a rule which declares his testimony competent if taken before such interest, and hence before such bias came into existence, is apparent. But the analogy is doubtful. Here the purpose and motive of the statutory rule is to preserve equality of litigants in the admission of the testimony of interested parties. It is because, and solely because, one litigant has deceased and cannot be heard to give his version of mutual transactions that the surviving litigant is also debarred from presenting his version. It is the use of the testimony and the time of its use which should govern if the spirit and purpose of the statute is to be regarded. We do not think that the common-law rule as to competency of testimony of an interested witness, when such testimony is taken before interest accrued, should by analogy govern here. The testimony, being such at the time it is to be considered by the court as would, if admitted,

contravene the spirit and purpose of the statute, in that it would be in effect permitting the living litigant to bring his version of mutual transactions to the consideration of the court at a time when the adverse litigant has been precluded by death from answering such version of the mutual transactions, should, we think, be treated as incompetent under the statute. Decisions of other states are not wanting which support this interpretation."

The court feels inclined to adopt the rule which will permit the testimony to stand. In the case at bar, the testimony under discussion was taken in open court and the witnesses subjected to a rigid cross-examination, while the defendant Taylor was still alive and present. Had this opportunity been denied, it would have presented stronger grounds for a contrary decision. Again, it is the rule adopted by the federal courts, first, in the absence of statute, and later under federal statute having the same general effect as the statute here under consideration.

The reason given in the books for the construction herein adopted also is persuasive. While it may be true, as the Illinois court says, that there is no perfect analogy between the present rule under discussion and the old common-law rule, with respect to the exclusion of testimony of parties in interest and therefore that it would not follow that there would be logical ground for placing the reason for the rule in this case upon the same ground as the reason for the rule in the other, yet there is undoubtedly one fundamental reason for both. In the case of the common-law rule, subsequently discarded, it was adopted because of the fact, or rather supposition, that mankind was morally weak, and that therefore in matters involving a direct interest, a man would not be likely to tell the exact truth. The same reason in the first instance undoubtedly underlies the rule in regard to the testimony of the adversary of a deceased party, in that it might be presumed, in the absence of his adversary, he would shade testimony in favor of his own interest. However, in either case as much injustice, or perhaps more, may be done in excluding such testimony than in receiving it, if we adopt the theory that men are ordinarily honest, particularly when under oath. It is at least persuasive that the court should not enlarge the scope of the statute by what might be considered as arbitrary construction. Grosshart v. McNeal (Okl.) 218 Pac. 329.

I am impressed with the thought that, were it not for the particular statute in question, the testimony would undoubtedly have to stand. It is a strict statutory enactment, and if the Legislature had contemplated that testimony, as in this case, on behalf of one party should on the death of his adversary become incompetent, it would have made a provision accordingly.

For the reasons stated, the motion will be overruled and denied, reserving to the defendants their exceptions.