MARSHALL et al. v. CAMPBELL.
(No. 9025.)

(Court of Civil Appeals of Texas. Ft. Worth. March 18, 1919. Rehearing Denied April 12, 1919.)

1. WITNESSES ⊙⟿177—TRANSACTIONS WITH PERSONS SINCE DECEASED—REBUTTAL.

Where contestants introduced evidence of statements of testatrix as to proponent's cruelty to, demands upon, and threats communicated to, testatrix, proponent may, notwithstanding Rev. St. 1911, art. 3690, forbidding a litigant to testify as to transactions with a person since deceased, deny the evidence introduced.

2. WITNESSES ⊙⟿177—REBUTTAL.

Where contestant was a daughter of testatrix, who was also the mother of proponent, testified that proponent stated that if the mother did not give her more money she would become an immoral woman, proponent is entitled to deny the statement.

3. WITNESSES ⊙⟿159(3) — COMPETENCY — TRANSACTIONS WITH PERSONS SINCE DECEASED.

Testimony by proponent and defendant in a will contest proceeding that she stayed with her mother, the testatrix, during a period of time in which she accompanied her mother to gospel missions, and on return found the house burglarized, etc., does not fall within the prohibition of Rev. St. 1911, art. 3690, relating to testimony as to transactions with persons since deceased.

4. WILLS ⊙⟿400—CONTEST—REVIEW—HARMLESS ERROR.

In a will contest, admission of testimony by defendant, the proponent of the will, showing her intimacy with the testatrix and opportunity to exercise undue influence, held harmless, though such testimony was inadmissible, under Rev. St. 1911, art. 3690, relating to testimony as to transactions with persons since deceased.

5. WILLS ⊙⟿400—CONTEST—REVIEW—HARMLESS ERROR.

Testimony by proponent, the defendant in a will contest proceeding, that she had addressed post cards for her mother, the testatrix, etc., held of a trivial nature, so that the admission of such testimony, if improper, did not warrant reversal.

---

⊙⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. WILLS ⚖️165(1)—UNDUE INFLUENCE—EVIDENCE—DECLARATIONS OF TESTATRIX.**

Evidence of declarations made by testatrix concerning the will and the acts of the proponent should be limited to the state and condition of the mind of the testatrix, and, unless there is a prima facie showing of undue influence or fraud, cannot be considered on those issues.

**7. WILLS ⚖️400—CONTEST—REVIEW—HARMLESS ERROR.**

In a will contest proceeding, an instruction on the use of evidence of the testatrix's declarations *held*, under the facts, harmless, if erroneous.

**8. WILLS ⚖️400—CONTEST—REVIEW—HARMLESS ERROR.**

In a will contest, where it appeared that contestants had entered into a written agreement with their mother relating to the estate, the submission to the jury of the question whether contestants had released all their rights *held* harmless, if erroneous, where the jury answered the question in the way the contract should have been construed by the court, if a question for it.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Proceeding by Mrs. Fannie Marshall, for herself and as guardian of the person and estate of Flora Peers, a person of unsound mind, against Mrs. Belle Campbell, to contest the will of Electa Ann Peers. From an adverse judgment in the county court, defendant appealed to the district court, and from a judgment there for defendant, plaintiffs appeal. Affirmed.

Ocie Speer, Marvin H. Brown and Williams & Smith, all of Ft. Worth, for appellants.

McLean, Scott & McLean, Capps, Canty, Hanger & Short, and David B. Trammell, all of Ft. Worth, for appellee.

BUCK, J. This is a proceeding to contest the will of Electa Ann Peers, instituted by Fannie Marshall, for herself and as guardian of the person and estate of Flora Peers, a person of unsound mind, originally in the county court of Tarrant county, Tex. The two contestants were daughters of the deceased, and the proponent or defendant was also a daughter of the deceased and a half-sister of the plaintiffs. The instrument purporting to be the last will and testament of the deceased was admitted to probate by the county court, and by the terms of the will all the property of the deceased, with some insignificant exceptions, was left to the defendant. From an adverse judgment in the county court the defendant appealed to the district court of Tarrant county, and after a trial upon special issues, resulting in a verdict and judgment for the defendant, the plaintiffs have appealed.

[1] Assignments 1, 2, and 3 complain of certain testimony in the nature of denials of defendant of acts of unkindness, violence, or cruelty by her to deceased. Plaintiff had introduced the testimony of Mrs. Emma Fitzgerald, otherwise known as Madam Wandera, who testified that Mrs. Peers, the deceased, had told her that—

"I am afraid to-night to turn my back to the door. I am afraid Belle will come in here and mash my brains out at any time. We have had several fights together. She has accused me of doing things and called me names."

She further testified that Mrs. Peers had told her that Mrs. Campbell had pulled her hair and had given her a good beating. There was other testimony of the same character, detailing alleged statements of the deceased as to the actions and conduct of the defendant towards her mother. Mrs. Campbell was asked if she ever struck her mother, to which she replied: "I never did; absolutely, no." She was also asked if she ever pinched her mother, or pulled her hair, or bit her, to which she replied: "No; I have combed her hair, I guess, a hundred times; but I never willingly or maliciously pulled a strand of it." She was also asked: "Did you ever lay a finger on her in violence in any way?" To this she replied: "Never; absolutely never; my hands always administered to her in absolute love; nothing else." These questions and answers thereto were objected to by plaintiffs on the ground that they were inadmissible and incompetent, under article 3690 of the Revised Civil Statutes, being testimony relating to transactions between the defendant and the decedent. The rule seems to be, under this and similar statutes, that where one party introduces the statements of the deceased as to transactions between the other party and the deceased the testimony of the other party is admissible to contradict or explain the particular transactions concerning which the purported statements of the deceased had reference. In O'Neill v. Brown, 61 Tex. 34, where the evidence of the deceased plaintiff on the former trial was admitted, it was held that the reason of the statute, which excludes one party from testifying in regard to transactions with another party who is dead, ceasing, the adverse party, also, was a competent witness. In Runnels v. Belden, 51 Tex. 48, it was held that where the plaintiff's depositions had been taken, and he had died, the suit being prosecuted to trial by the executor, it was error to exclude the testimony of a defendant on the trial touching the acts and declarations of the testator, about which the testator, the original plaintiff, had testified in his lifetime by depositions read in evidence. In this case Chief Justice Moore said:

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"In such case, if the executor insists on putting the deposition of his testator in evidence, it does not violate, but accords with, the reason and spirit of the law, and its proper construction, to permit the other party to the suit to also give his version of the matters between himself and the deceased referred to in such deposition; and this seems to be the interpretation given elsewhere to similar statutes. Mumm v. Owens, 2 Dill. [U. S. Cir. Ct.] 475 [Fed. Cas. No. 9,919]; Monroe v. Napier, 52 Ga. 385."

In Galvin v. Knights of Father Mathew, 169 Mo. App. 496, 155 S. W. 45, it was held, in construing a statute similar to ours, that where one of the original parties to the contract or cause of action in issue and on trial is dead, and the other party thereto, under the statute, may not testify to transactions with the decedent, the objection to such testimony is waived where the other party introduces a letter written by the deceased concerning the same matter. See, also, Hurley v. Lockett, 72 Tex. 262, 12 S. W. 212. "The object and spirit of the statute is to place parties upon an equality, so that one shall not be permitted to testify to transactions cognizant to both, when the other can no longer be heard." But where the testimony of the deceased party has been preserved, and through it he may be heard, the disqualifying rule does not obtain. Coughlin v. Haeussler, 50 Mo. 126. In Jones, Blue Book on Evidence, vol. 4, § 781, pp. 734, 735, it is said:

"The very object of excluding the evidence concerning statements made by a man since deceased was to prevent garbled or untruthful versions of interviews with him being given by a party interested in establishing them to the detriment of the estate, when there was no opportunity of rebutting them by reason of the seal set on the lips of the decedent. To allow such evidence would be productive of that inequality which the law abhors. As we have just shown, that inequality may nevertheless be removed by the representative using the adversary as a witness. But there are other ways. The privilege of objecting to the competency of the adverse party is also deemed to be waived, if the representative introduces testimony as to the transaction or communication in question. This may be done by introducing the deposition of the deceased or incompetent person. This renders the adverse party competent to testify fully as to those transactions dealt with in the deposition, but he cannot go into other communications or transactions."

In section 782, p. 752, Id., it is said:

"The principle is that the living party shall not be heard to give his version of a transaction about which death has sealed the lips of the other; but, when the testimony of the deceased party is made available in the controversy, it would shock justice to deny the right of the living party to be heard as to the matters covered by the testimony. Hence objections to the competency of the adverse party may be waived if the testimony of the deceased or incompetent person which has been preserved in the bill of exceptions is introduced, or if such testimony, taken at a former trial or hearing of the action, is presented by the representative."

We conclude that, inasmuch as the plaintiffs introduced in evidence the purported statements of the deceased as to certain alleged transactions between her and the defendant, the defendant, as a witness, was competent to testify as to those particular transactions. Appellee cites such cases as Adam v. Sanger, 77 S. W. 954, Potter v. Wheat, 53 Tex. 401, and Williams v. Neill, 152 S. W. 693, as sustaining the proposition that the evidence objected to does not come within the rule that a mere denial on defendant's part that certain transactions referred to in the statements of the deceased introduced occurred is not inhibited by article 3690 of the Revised Civil Statutes. But we do not find to necessary to decide this question, concerning which there seems to be some diversity of holding, and predicate our ruling on the ground that, plaintiffs having introduced alleged statements of the deceased with reference to certain transactions, the defendant was a competent witness as to those particular matters. Hence the first, second, and third assignments are overruled.

[2] While on the stand, plaintiff was asked, "Did you ever talk to your aunt, Mrs. Bridges, or any one else, about this will, this property, or about procuring any will of any kind from your mother?" To which the witness replied, "No, sir." Witness was also asked: "Mrs. Campbell, the question was asked and testified to by plaintiff, Mrs. Marshall, that you came to her house on one occasion and stated that unless you got more money that you would destroy yourself—go to a bad part of town. Did you ever make that statement?" To which the witness answered, "I never did." Her counsel then asked, "To her or to anybody else?" Witness answered, "Never." The objection to this testimony is that by the answers of the witness, to the effect that she never talked to any one else concerning the matters inquired about, she made an indirect reference to her mother, the deceased, and thereby in effect stated that she never talked to her mother concerning such matters, and consequently the testimony was inadmissible under article 3690, supra.

Plaintiffs introduced evidence of Mrs. Fitzgerald to the effect:

"Mrs. Peers evidenced a fear of what Mrs. Campbell might do with herself. She said Belle demanded money of her—so much she did not care to give it to her—and that Belle flew into a rage: and I asked her why she gave it to her, and she says, 'Belle would have gone astray, or something wrong, if she could not get the money one way or the other; she would

have got it, and I did not want her to do anything wrong.' Belle told her, 'If I don't get it from you, I can get it from others.' She said she had to give it to her. She did not tell me how her daughter· Belle said she would get it, or where; but she said she could do it and would do it. She had friends that would give it to her. The reason I said she feared Belle would go astray is because that is what Mrs. Peers said herself. Mrs. Peers said, 'Emily, she would have gone astray or done wrong.' "

Mrs. Marshall testified that Mrs. Campbell came to her on one occasion and said that if her mother did not give her more money she was going down to the Acre; that the women in the Acre had more money than she had. If the testimony of Mrs. Fitzgerald as to what Mrs. Peers said to her includes a statement to the effect that Mrs. Campbell had threatened, if she did not get more money, to go to a part of the town frequented by immoral women, then the objection to the testimony would be controlled by what we have said with reference to previous assignments. If Mrs. Campbell's denial be limited only to the statements made by Mrs. Marshall as to what Mrs. Campbell had threatened to do, such denial would not come within the inhibition of article 3690; so that, in either event, we think the assignment should be overruled, as also the sixth assignment, involving largely the same question.

[3, 4] The seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth assignments, urging objections to certain testimony of the defendant to the effect that she stayed with her mother during a certain period of time, that she went with her mother to the Union Gospel Mission, and on their return found that their house had been burglarized, that on one occasion she left her mother's house and returned home on account of sickness, that she took a trip to California in company with her mother, etc., we do not think present error. We do not think that any of these statements made by the'witness come within the spirit of the inhibition contained in article 3690, supra. Moreover, the answers to the questions asked her were favorable to plaintiffs' contention, in that they tended to show the intimacy of the relation between defendant and her mother, their almost daily association, which would have afforded the opportunity for the defendant to exercise undue influence over her mother in the making of the will, which plaintiffs charged in their petition. Moreover, other witnesses, offered by plaintiffs, testified to practically the same facts detailed by defendant. Hence these assignments are overruled.

[5] In the fifteenth assignment objection is made to the answer of the witness that she did not know until the instrument was presented to the county court for probate what was in her mother's will. The court, upon the objection of the plaintiffs' counsel and upon the request of the defendant's counsel, excluded other portions of the testimony of the witness to the effect that her mother never did discuss the will with her. Hence we overrule the fifteenth assignment.

The same ruling and the same observation is made with reference to the sixteenth assignment. We do not think any reversible error is shown by the admission of the testimony of the defendant to the effect that just before her mother left for Bluefields, Va., the defendant addressed certain post cards for her, one of which was to Mrs. Bert Marshall, and was in the handwriting of the defendant. The objection is to the testimony as a whole, while at least that part of it that the post card was addressed in the handwriting of the witness we do not think is subject to the objection urged that such act constitutes a transaction with the deceased. But, in any event, we consider the testimony admitted is of too trivial a nature to call for a reversal. Hence we overrule the seventeenth assignment.

[6, 7] In the eighteenth assignment it is urged that the court improperly restricted the use and purpose of the declarations of the testatrix introduced in evidence to the question of the state and condition of the mind of the testatrix at and from the time of the execution of the will, introduced in evidence. In Scott v. Townsend, 106 Tex. 322, 166 S. W. 1138, our Supreme Court, in an opinion by present Chief Justice Phillips, says:

"How, then, under the issue, is the further essential fact, that the ·influence was successfully practiced, to the subversion of the testator's free agency, and produced the will as its result, to be established or disproved? His declarations that the will was thereby procured, or that the instrument was not his will, or his statements of like nature, are, of course, inadmissible, since his declarations are not competent to prove the fact of undue influence, or as direct evidence that it produced the will. But, where there is competent evidence of the exercise of undue influence, the issue as to whether it was effectually exercised necessarily turns the inquiry, and directs it to the state of the testator's mind at the time of the execution of the will, since the question as to whether free agency is overcome in its very nature comprehends such an investigation. * * * As a means, therefore, of determining the mental state at such time, voluntary declarations, indicative of it, rest upon as sure a ground as any which the inquiry provides, and properly come within that class of unsworn declarations to which the law gives the character and probative force of original evidence upon certain issues, because, from their nature, they admit of no better or more reliable proof. The important consideration to be observed, however, * * * is that the declarations be such as reasonably tend to disclose what the state of

the testator's mind .was at the very time of his making the will."

In Johnson v. Brown, 51 Tex. 65, a' testator's declarations were held admissible—

"not, of themselves, as proof sufficient to overcome the testimony of the subscribing witnesses, but as a circumstance, in a case of this character, proper for the consideration of the jury in connection with all the other facts and circumstances in evidence; that they are not so much declarations disparaging a duly executed will, as evidence of an independent collateral fact, the state of feeling between the parties, and which would, in some degree, tend to prove the issue before the court."

In Wetz v. Schneider, 96 S. W. 59, it is, said that the declarations of a testator are not admissible as evidence that he was unduly influenced in making the will, nor as evidence of the truth of the facts stated by him, but only as external manifestations of his mental condition. Kennedy v. Upshaw, 64 Tex. 411; McIntosh v. Moore, 22 Tex. Civ. App. 22, 53 S. W. 612; Campbell v. Barrera, 32 S. W. 725; Schouler on Wills, 193; 11 Am. & Eng. Law (1st Ed.) 156.

In Borland on Wills and Administration, § 84, pp.·231, 233, it is said:

"Evidence· of declarations made by the testator as to the execution or nonexecution of the will is not admissible as evidence of the truth of the facts stated, whether made before the date of the will or after, unless part of the res gestæ. But such declarations may be admitted for the purpose of showing the condition of the testator's mind, or state of his affections."

In appellant's first proposition under the .eighteenth assignment, it is urged that the charge given was too restrictive and upon the weight of evidence, because such evidence was admissible upon the question of undue influence; and in the second proposition thereunder, it is urged that such declarations were admissible under the question of fraud alleged. While such declarations are admissible to show the testator's condition or state of mind, whether sane or insane, whether of testamentary capacity or not, whether subject to undue influence or otherwise (Williamson v. Nabers, 14 Ga. 286; State v. Bennett, 11 S. W. 264; Vance v. Upson, 66 Tex. 476, 1 S. W. 179, and other cases cited in notes 12 and 13 on pages 232 and 233 of the above-cited text), yet they are admissible only so far as they show or tend to show the condition of the testator's mind, the effect of undue influence or fraud, otherwise shown to have been attempted to be exercised on the testator's mind. But a prima facie showing as to the existence of undue influence or fraud must be made before the evidence or the effect thereof on the testator's mind would be admissible. So, at last, the scope of the inquiry and consideration on the part of the jury of such evidence is limited to the question of what was the condition or state of mind of the testator at the time. We have concluded that no prejudicial error is shown by the charge given. This conclusion is fortified by the absence .of any facts or testimony cited in appellant's brief that any undue influence or fraud was even sought to be exercised or practiced to induce the testatrix to execute the will in question. It is in evidence, though not referred to under this assignment, that Mrs. Martha C. Bridges, a sister of the decedent and aunt of the plaintiffs and defendant, said to the testatrix that she should "right Belle or a curse will rest on you"; that later Mrs. Peers told the witness, "I have righted Belle." Mrs. Bridges further testified:

"My sister knew what my idea was about righting Belle. I might have talked to my sister about this matter more or less a hundred times. I talked with her every time she would bring the matter up and I would express myself on it; but I never said anything to her as to how much or how little she should leave Belle. I did not think it was necessary to suggest to her to do justice by Fannie, because she had already done justice by herself, or made the law do it."

The evidence further shows that the father, Gen. J. M. Peers, left a will under which he devised his part of the community estate of himself and wife to his widow, the testatrix, vesting in her the sole authority to manage, control, and dispose of said estate, or any part thereof, as she might see fit; that after his death Mrs. Marshall, for herself and sister, Miss Flora Peers, demanded a division of the estate, and that in compliance with such demand, after the will was probated, Mrs. Peers gave to each of said claimants an undivided one-third interest in all of the real estate belonging to the community estate; that in accordance with the provision of the contract of settlement made by and between Mrs. Marshall, joined by her husband, and for the benefit of Miss Flora Peers, Mrs. Marshall received one-fourth of the entire rents from the community estate of J. M. and Electa Ann Peers up to the time of her mother's death and one-third thereafter; that at the time of the settlement Mrs. Peers deeded to Mrs. Marshall and to Miss Peers each a one-third interest in the real estate, which property, as we understand the record, was not disposed of under the will of Mrs. Peers. It thus appears that the two plaintiffs received substantially their proportion of the entire community estate of their father and mother, more than they would have received at that time, had the will of their father not been upheld. Hence we overrule appellant's eighteenth and nineteenth assignments.

[8] Under the twentieth assignment it is urged that the court improperly submitted

to the jury question or issue No. 6, as follows:

"In executing the contract introduced in evidence before you, was it the intention of the parties thereto to make final settlement and disposition of whatever interest the plaintiff, Mrs. Fannie Marshall, had in the estate of her father, and of whatever interest she might thereafter have in the estate of her mother, which said issue was answered by the jury, 'Yes.'"

It is contended that, as the contract of settlement was in writing, its construction became a question of law for the court, and not a question of fact for the jury. The plaintiff, Mrs. Marshall, testified:

"My mother made me a deed to one-third of the real estate, with certain limitations as to the rents, and under the same conditions made a deed to Flora to one-third of the real estate, and she reserved the rent from Flora's part during her lifetime. * * * The real estate my mother left to my sister Belle was her one-third that she retained at the time she deeded one-third of the real estate to each Flora and myself at the time this settlement was made."

The contract of settlement provides, in part:

"In consideration of the foregoing, the said Mrs. Fannie Marshall, joined by her husband, B. Marshall, acknowledges receipt in full of all amounts she is entitled to receive from the estate of her said father and her said mother, and hereby expressly agrees to release any and all claims of any and all kinds whatsoever to any and all portions of said estate, except only that part to be conveyed to her, as hereinbefore specified."

If it be true that the court should have construed the said instruments, the contract of settlement and the two deeds of conveyance made thereafter in pursuance thereof, yet we are of the opinion that no prejudicial error has been shown, because, as we construe said contract, the agreement between Mrs. Peers and her two daughters was that Mrs. Marshall and the trustee for Miss Flora should each receive the portion of the community estate of J. M. and Electa Ann Peers, hereinabove mentioned, in full settlement of any claims either Mrs. Marshall or Miss Flora might have against Mrs. Peers, the sole beneficiary under the will, or against the community estate.

This conclusion also disposes of the twenty-first assignment, in which objection is made to the testimony of William Bryce, who witnessed the contract of settlement between Mr. and Mrs. Marshall and Mrs. Peers, to the effect that the contract contemplated a settlement of the whole estate. Plaintiff, Mrs. Marshall, specially pleaded that in the contract of settlement it was not contemplated by her that thereby she relinquished any portion of her expectancy to the estate of her mother, Mrs. Electa Ann Peers, and that she only relinquished her interest in the estate of her deceased father. On behalf of Miss Flora Peers she pleaded that the latter was a person of unsound mind and wholly incapable of making and entering into a valid contract, and that, therefore, she was not barred by any such agreement as pleaded by defendant. It appears that the witness William Bryce was instrumental in effecting the settlement between the two daughters on the one hand and the mother on the other, and that, as before said, he was a witness to the contract. If the pleading of the plaintiffs be taken as alleging an ambiguity, then evidence would be admissible to solve the ambiguity; but apparently plaintiffs offered no such evidence. We are not prepared to say that the instrument was ambiguous, or that there is any sufficient ground to sustain appellants' theory as to the purport of the instrument in this respect. Hence the admission of the testimony of Bryce would become immaterial.

All assignments are overruled, and the judgment is affirmed.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes