## WOOTTON et ux. v. JONES et al.    (No. 6964.)*

(Court of Civil Appeals of Texas. Austin. May 26, 1926. Rehearing Denied July 2, 1926.)

**1. Interest ⬤⟞31.**

Where mortgage note did not provide rate of interest on past-due interest or attorney's fees, legal rate of 6 per cent. only may be recovered.

**2. Usury ⬤⟞18.**

Refusal of lender, after contracting to lend money at legal rate, to deliver whole sum agreed is not usury, but mere breach of contract.

**3. Usury ⬤⟞119.**

Evidence held insufficient to raise issue as to agreement to loan sum, for which note and mortgage were given, and which exceeded sum actually loaned, so as to make nonusurious contract.

**4. Usury ⬤⟞121.**

Jury's finding that borrower received only $1,900 for $2,000 note held to carry prima facie finding of usurious contract.

**5. Usury ⬤⟞113.**

Where evidence shows full amount of loan was not paid, lender has burden of showing money was withheld, in violation of agreement, in order that contract be nonusurious.

**6. Usury ⬤⟞111(1).**

Plea of usury does not raise issue of breach of contract for failure to pay amount called for by note, or partial failure of consideration.

**7. Usury ⬤⟞121.**

Jury finding on issue of usury that borrower received $1,900 held inconsistent with finding of agreement to loan $2,000, the amount of note and mortgage, in view of evidence.

**8. Evidence ⬤⟞207(1).**

Recital, in judgment subsequently reversed, of admission that allegation that note was usurious was not controverted held competent, on subsequent trial, as admission against interest.

**9. Witnesses ⬤⟞171.**

Where witness is incompetent because testimony relates to personal transaction with de-

cedent, proof of testimony given by witness on former trial when decedent was alive is not admissible.

**10. Witnesses ⬤▭178(4).**

Where representatives of deceased introduce evidence given by deceased prior to his death, opposing party may testify on same subject.

**11. Witnesses ⬤▭144(2).**

Testimony of party as to transactions with deceased *held* inadmissible, though decedent was alive at former trial on same matter, and might have testified as to transactions.

**12. Usury ⬤▭100(1).**

Where debtor elects to sue for statutory penalty for usury, he is not entitled to have interest payments credited on principal.

**13. Homestead ⬤▭181½.**

Evidence *held* to raise issue of estoppel on part of mortgagors to assert against trust deed lien homestead character of property covered thereby.

**14. Homestead ⬤▭177(2).**

Neither husband nor wife are estopped to assert against mortgagee homestead character of property actually occupied as home by designating other property as homestead, coupled with declaration that designated property is homestead.

**15. Homestead ⬤▭177(2).**

Husband or wife may, by declarations, estop themselves from asserting homestead character of property not actually occupied as home.

**16. Homestead ⬤▭29.**

Designation of homestead by husband alone, in absence of fraud, is binding on both spouses, where excess over homestead exemption is occupied for homestead purposes.

**17. Subrogation ⬤▭17.**

Holder of trust deed, taken upon representation that property covered was not homestead, was entitled, on successful repudiation of such representation, to subrogation to amount of mechanic's lien discharged by proceeds of loan.

**18. Limitation of actions ⬤▭35(1).**

Statutory penalties, accruing more than two years before filing plea of usury, *held* barred.

**19. Limitation of actions ⬤▭49(4).**

Recovery of rentals in action to set aside judgment foreclosing trust deed *held* not barred by limitations, as action did not accrue until the judgment was set aside.

**20. Limitation of actions ⬤▭83(4).**

In view of Rev. St. 1925, arts. 1850 and 2080, suit to set aside foreclosure judgment filed within limitation period was not barred by limitation as against defendant's executors upon his death pending the action, in absence of delay in reviving suit.

**21. Abatement and revival ⬤▭74(4).**

Unreasonable delay in reviving suit against executor on death of party defeats right of revival.

**22. Abatement and revival ⬤▭68.**

Under Rev. St. 1925, art. 1850, death of defendant in suit to set aside foreclosure judgment pending appeal from judgment thereon had no effect on such judgment whether cause of action would survive or not.

**23. Trial ⬤▭232(2).**

Where special issues were presented, instruction that plaintiff had burden of establishing facts which would allow recovery *held* improperly given as requiring jury to know effect of issues submitted on rights of parties.

Appeal from District Court, Tom Green County; J. F. Sutton, Judge.

Suit by H. A. Wootton and wife against W. C. Jones, wherein the heirs of Grace Wootton were made parties plaintiff on her death pending appeal, and Will C. Jones, executor, and devisees of W. C. Jones, were made parties defendant after his death pending appeal. From the judgment, plaintiffs appeal. Reversed and remanded for a new trial.

See, also, 228 S. W. 142.

Snodgrass, Dibrell & Snodgrass, of Coleman, for appellants.

Collins, Jackson & Sedberry, Upton & Upton, and H. E. Jackson, all of San Angelo, for appellees.

McCLENDON, C. J. The controversy involved in this suit has been in litigation since April 30, 1914. The instant case has been before the appellate courts in two former appeals, but upon issues not involved in the present appeal.

We will state chronologically the salient features of the controversy:

On January 6, 1909, appellant H. A. Wootton and his wife, Grace Wootton, executed and delivered to W. C. Jones their joint and several promissory note for the principal sum of $2,000, due two years after date, bearing interest at 10 per cent. per annum, and providing for 10 per cent. attorney's fees. At the same time Wootton and wife executed a deed of trust to secure this note, conveying lots 5, 6, and 7, in block 2, and lots 11 and 12 in block 23, in Ellis addition to the town of San Angelo, to Jos. Spence, Jr., as trustee. The deed of trust contained the following recital:

"The said parties of the first part declare that the property hereinbefore mentioned and conveyed to said party of the second part forms no part of any property by them owned, used or claimed as exempted from forced sale under the laws of the state of Texas, and disclaim and renounce all and every claim thereto under any such law or laws, and hereby designate the following described property, to wit:

"Two hundred acres of land situate in Tom Green county, Texas, a part of the J. O. White 1,280-acre survey No. 354, where said parties of the first part now reside with their family as their homestead, being survey No. 10 in name of J. O. White, as their homestead, and as con-

stituting all the property (of nature similar to that herein conveyed) owned, used, or claimed by them as exempt under said laws."

On April 30, 1914, Jones brought suit against Wootton and wife, to recover the amount of the note, and to foreclose the deed of trust lien.

On May 1, 1914, Wootton and wife executed an additional deed of trust to secure the note, covering 1,120 acres of land in Tom Green county, and a half interest in block 78, Concho addition to the town of San Angelo. On the same day the maturity date of the note was extended to October 8, 1915, "provided the annual interest is paid as it falls due according to the terms of said note."

On November 24, 1914, Jones filed a first amended original petition, in which he alleged additionally the execution of the second deed of trust, and prayed for his debt with foreclosure of both trust deeds.

On December 14, 1914, Wootton and wife filed a verified amended answer, admitting the execution of the note and the two trust deeds, but set up the extension agreement, and averred that the note had not matured. They also set up a cross-action for $100 damages for unlawfully bringing the suit before the debt had matured.

On April 13, 1915, A. F. Collins intervened, asserting a prior lien on the property covered by the second trust deed.

On May 20, 1915, a decree was entered in the case under the terms of which Collins took a nonsuit, and default judgment was rendered against Wootton for $2,739.60, with foreclosure against Wootton and wife on the property covered by the first trust deed, and one-half interest in lot 19, block 78, Concho addition to San Angelo. An order of sale was issued under this judgment on July 8, 1915, and the property was levied upon and advertised for sale. On August 2, 1915, Wootton and wife filed the present suit, in which they sought to set aside the judgment and enjoin the execution sale thereunder. They alleged a compliance with the extension agreement, setting up certain payments, amounting in the aggregate to $1,279.67, and alleged fraud on the part of Jones and his attorneys in procuring the judgment. The further allegation was made that the property foreclosed upon included their homestead. On the same day a temporary injunction was issued under this petition restraining the execution sale.

On May 15, 1916, Wootton and wife filed a first supplemental petition, in which they alleged additionally that the $2,000 note was usurious, in that they only borrowed and received from Jones $1,900 for the $2,000 note, and that the contract, therefore, provided for a greater rate of interest than 10 per cent. per annum. They set up certain interest payments, amounting to $1,365.44, and asked for recovery of double that amount as penalty under the usury statutes. On the same day

Jones filed an answer in the case, and moved to dissolve the injunction on the ground that the cross-action setting up usury constituted an independent action, and the right to litigate it was not germane to the suit to set aside the former judgment for fraud.

On May 16, 1916, the temporary injunction was dissolved, and the "petition for injunction" dismissed; the judgment reciting that "defendants by their counsel in open court stated that they now abandoned any and all grounds for injunction based on any homestead claim of defendants in any of the real estate involved in this suit." From this judgment Wootton and wife appealed to this court, and the appeal was dismissed on the ground that the judgment was not final, in that it only disposed of the injunction feature of the case, and no adjudication was made upon the homestead issue. 189 S. W. 350.

On August 10, 1916, a second order of sale was issued under the judgment in the first suit, and the property levied upon was sold to Jones on September 5, 1916, for $750 and a net credit entered upon the judgment of $703.30.

Wootton and wife filed first and second amended original petitions, respectively, on May 9 and June 11, 1917, the substantial allegations of which with reference to fraud in procuring the former judgment, usury, and homestead were not materially changed. On the latter date Jones filed a plea in abatement to the entire suit, in which he claimed that the homestead issue had been abandoned in the judgment of May 19, 1916, and that the usury issue had not been pleaded in the former suit, and constituted a separate and independent cause of action, and did not authorize the maintenance of the suit to set aside the former judgment. This plea in abatement was sustained, and the suit dismissed on June 14, 1917. An appeal was taken from this judgment, and the cause was transferred to the El Paso Court of Civil Appeals, in which the judgment was reversed and the cause remanded. 204 S. W. 237. The Supreme Court granted a writ of error, and the judgment of the Court of Civil Appeals reversing and remanding the cause was affirmed, upon recommendation of the Commission of Appeals, 228 S. W. 142. The holding of the commission was that the recital in the judgment of May 19, 1916, abandoning the homestead, was limited to the injunction feature of the case, and did not estop the plaintiffs below from asserting the homestead issue as an element in their cause of action for setting aside the judgment in the former suit. The judgment of the Supreme Court was rendered on March 2, 1921, and the records of that court show that the mandate was issued on September 16, 1921. Pending this appeal Jones died. On March 18, 1919, his will was probated in Tom Green county, and letters testamentary issued to Will C. Jones

as independent executor of the will. Mrs. Wootton also died pending this appeal.

It appears from an order made on February 10, 1925, that plaintiffs filed a third amended original petition on May 31, 1922, and that defendants had moved to strike out this petition. The court heard the motion and evidence thereon, and found that the petition was filed without authority, in that it was filed during term time without leave of court or any other order or agreement authorizing its filing; and thereupon, on February 10, 1925, the amended petition was stricken out, and plaintiffs were given permission to file it as of February 9, 1925. This pleading does not appear in the record, and no exception was taken to the order striking it from the files. No other proceedings appear in the record subsequently to the issuance of the mandate and prior to the order of February 10, 1925. On that date plaintiffs filed a fourth amended original petition, in which they alleged the death of Mrs. Wootton and the death of Jones. The heirs of Mrs. Wootton were made parties plaintiff, and the executor and devisees under the will of W. C. Jones were named as defendants. This petition is the one upon which the trial was had. It is 34 pages in length, but, aside from the change in parties above noted, it does not materially change the cause of action asserted in the pleadings upon which the trial was had in 1917. Briefly stated, the grounds of recovery are as follows:

The judgment in the former suit is sought to be set aside on the ground of fraud in its procurement. The plea of usury is made substantially as before, but somewhat more elaborately and in detail, and penalty in double the amount of the usurious interest is prayed for. The homestead issue is also pleaded more in detail. The alleged wrongful foreclosure sale under the former judgment, the ousting of plaintiffs from possession of the property, the holding of possession thereof by Jones during his lifetime, and after his death by his executor and devisees, is set up, and a prayer for damages is predicated thereon, to be measured by reasonable rental value of the property during the time plaintiffs were thus deprived of its use.

On the same day the defendants filed a fourth amended answer, urging various exceptions, a general denial, and special pleas, which need not be noted further than the following: A plea of subrogation to the extent of $784.55 in taking up a valid mechanic's lien to that extent on the alleged homestead property out of the proceeds of the $2,000 note; plea of estoppel to assert homestead by virtue of the above recital in the original deed of trust, and the physical facts of occupancy as a home of the property designated in the deed of trust; and several pleas of limitation.

On February 10, 1925, the cause was tried to a jury on special issues, and upon their answers a decree was entered setting aside the former judgment and rendering judgment for the defendants against Wootton individually for $2,999.89, recited to be the principal, interest, and attorney's fees on the $2,000 note, after allowing certain named credits and foreclosing the deed of trust liens on lots 5, 6, and 7 in block 2, Ellis addition, and a half interest in lot 19, block 78, Concho addition. As to lots 11 and 12 in block 23, Ellis addition, the deed of trust was declared void, and the homestead issue and defendants were subrogated to the mechanic's lien to the extent of $893 of their debt.

The findings of the jury support plaintiffs' claim of fraud in procuring the judgment in the former suit, and fix the rental value of the property sold under foreclosure. There is no attack on these findings, and they need not be further noted. The findings which are brought in question are the second, third, fourth, and fifth, which read:

"Special Issue No. 2: What amount, stated in dollars and cents, was it agreed that Wootton should receive in money and property from W. C. Jones for the $2,000 note, of date January 6, 1909, executed by Wootton and wife in favor of W. C. Jones? Answer: $2,000."

"Special Issue No. 3: What amount, stated in dollars and cents, did H. A. Wootton receive in money and property from W. C. Jones for the $2,000 note, of date January 6, 1909, executed by Wootton and wife in favor of W. C. Jones? Answer: $1,900."

"Special Issue No. 4: Did the residence property of Wootton and wife located on lots Nos. 11 and 12, block 23, Ellis addition to San Angelo, constitute the residence homestead of Wootton and wife at the time the deed of trust was executed by them to Joseph Spence, Jr., trustee, to secure the Jones' note? Answer, 'Yes' or 'No.' Answer: Yes."

"Special Issue No. 5: Did the 200 acres designated as a homestead in the deed of trust from H. A. Wootton and wife to Joseph Spence, trustee, to secure W. C. Jones' $2,000 note, constitute the homestead of H. A. Wootton and family at the time said deed of trust was executed and delivered? Answer, 'Yes' or 'No.' Answer: No."

[1] Appellants assert that interest on the note is figured at 10 per cent. compounded, and that 10 per cent. interest is allowed on the attorney's fees, which they contend is erroneous, since the note did not provide that past-due interest or attorney's fees should bear interest at the rate of 10 per cent., and such interest and attorney's fees should therefore bear only the legal rate of 6 per cent. This contention is unquestionably correct. We shall not advert to this fact further, however, because the trial court's judgment is being reversed on other grounds.

The appeal is by plaintiffs below from this judgment.

Appellants have filed a most elaborate brief, in which there is much reiteration and what seems to us unnecessary prolixity. Assignments of error are copied therein number-

ing 45, and these are followed by 30 propositions. Checking over the propositions with the assignments, we find 15 of the latter are not referred to in the former, leaving 30 assignments briefed. To discuss each of these propositions would subject the opinion to the same criticism the brief merits, would extend its length unduly, and would serve rather to confuse than to clarify the views which we have reached upon the questions presented. We shall take up these questions without reference to the order or grouping of the propositions, and state our conclusions as concisely as we are able to do so consistently with sufficient clarity to render them intelligible.

Appellees have filed a number of cross-assignments, in our discussion of which we will follow the same course.

The questions which the record presents relate to three aspects of the controversy which the suit involves. These we will consider in the following order: (1) Questions relating to the usury issue; (2) questions relating to the homestead issue; and (3) questions which relate to the issue of limitation.

There are several questions presented upon the admission and exclusion of testimony which will be considered along with the above issues under which they seem logically to fall.

[2] It is the contention of appellants that the third jury finding quoted above entitled them to a judgment establishing their plea of usury. They base this contention on two grounds: First, it is asserted that the third finding establishes usury regardless of the second finding; and, second, they assert that the second finding has no basis in the evidence, that it should not have been submitted to the jury, and that the court should have disregarded it in rendering judgment.

Appellees contend, on the other hand, that the second finding to the effect that Jones was by agreement to loan Wootton the full $2,000 rendered the contract nonusurious, and that the third finding to the effect that Wootton received from Jones only $1,900 did not render the contract usurious, but merely made Jones liable to Wootton for breach of his contract to lend the full $2,000.

The only authority to which we are cited on this question is 39 Cyc. 993, which we quote:

"When a lender has made a contract to lend money at a legal rate, his subsequent refusal to deliver to the borrower the whole sum agreed to be loaned is not usury, but a mere breach of contract for which the borrower has an adequate remedy."

In support of the text cases from Minnesota, New Jersey, and New York are cited, some of which are in point, others not. There seem to have been no further cases found by the editors of Cyc. and Corpus Juris upon this subject, and we have been cited to none by either party to the appeal. Appellants

have been generous in citations of, and quotations from, Texas cases upon the general subject of usury, and, no doubt, their research has been exhaustive. But we do not find that this question has been expressly ruled upon, except in the cases cited under the above Cyc. quotation. The general principle there announced seems to us to be sound, and it has our approval.

[3] We have reached the conclusion, however, that appellants are correct in their assertion that the issue presented to the jury in the second special issue is not raised by the evidence. The only testimony upon this subject is that of Wootton himself, the substance of which is that he applied to Jones for a loan of $2,000; that Jones agreed to loan him the money on condition that he bought certain live stock at an agreed valuation; that the total amount loaned should be $1,900; that there should be a charge of $100 as a bonus for making the loan; and that this amount in money and property ($1,900) he received from Jones and no more, in accordance with this express agreement. There was no other direct testimony upon this issue. The only circumstances from which any contrary inferences might be drawn were that the note was in the principal amount of $2,000, recited that it was for value received, and therefore imported full consideration, and that no question of usury was ever raised or suggested until after the judgment was rendered in the first suit. The evidence showed that several interest payments were made, calculated on the basis of 10 per cent. for the full $2,000, and credited on the note as interest.

[4-6] In this state of the record we think that the finding by the jury that Wootton only received $1,900 for the $2,000 note necessarily carried with it a prima facie finding of a usurious contract. In what way there could have been an agreement on the part of Jones to loan the full $2,000, and a payment of only $1,900, is left entirely to conjecture. The presumption, of course, in the absence of any evidence, is that Wootton received the full amount of the principal called for in the note. Proof that he received a less amount, the note having been delivered and interest having been subsequently paid thereon, would to our mind admit of no other conclusion than that the amount received was in accordance with the agreement of the parties, unless there were some explanation of the discrepancy between the amount contracted and the amount received. It is true that very much latitude is given the jury and trial courts in disregarding either in whole or in part the uncorroborated evidence of an interested witness. The jury necessarily based its finding that only $1,900 in money and property was received from Jones by Wootton, upon the uncorroborated testimony of Wootton alone detailing the agreement under which the loan was made and the carrying out of that agree-

ment. We think, where the evidence is sufficient to support a finding made by the jury that the full amount of the loan was not paid, the burden of introducing same character of explanatory evidence to show that the money was withheld in violation of the agreement of the parties was cast upon the lender. The findings that the agreement was to lend the full $2,000, and that only $1,900 was in fact paid over, would necessarily carry with them a finding of breach of contract on Jones's part. The evidence furnishes no basis whatever for a finding of such breach. The subsequent payment and acceptance of interest over a period of several years, and the final bringing of suit and recovering of judgment for the full amount of principal and interest according to the face of the note, clearly evidences an assertion on Jones's part that he had complied with his part of the undertaking and that Wootton owed him the full face of the note, principal, and interest. The plea of usury in no way raises the issue of breach of contract or partial failure of consideration. It admits compliance on Jones's part with his agreement and the correctness of the amount, if its terms are to control, but asserts that the very agreement sought to be enforced was illegal as being usurious, and the relief sought was that provided by statute.

[7] The second finding negatives a usurious contract, because it shows an agreement in accordance with the face of the note. The third finding, however, in the light of the evidence, is inconsistent with the second finding, in that the only evidence which supports the former negatives the latter. Outside of this evidence all inferences to be drawn from contemporaneous and subsequent circumstances evidence a compliance with the contract as represented by the face of the note. It is not essential, however, that we base our holding upon a necessary conflict between the findings under the second and third special issues, since we sustain below an assignment on the exclusion of evidence. Our holding, which is essential to setting aside the verdict on the usury issue, is that the second finding of necessity establishes a nonusurious agreement.

Appellants offered in evidence, and the court excluded that portion of the judgment of June 14, 1917, reading:

"Whereupon the pleadings' and the evidence having been heard, and the court being of the opinion that the undisputed facts establish the material allegations in plaintiff's said third amended original petition that the note and contract mentioned therein was usurious, and the defendant by his counsel having stated in open court that they did not controvert that claim."

[8] The judgment from which this recital is taken was rendered in the present suit under pleadings as to usury substantially the same as those in the present appeal. Jones was alive at the time, was contesting plaintiffs' suit, and the recital shows an admission by his counsel in open court that he did not contest the claim of usury. The judgment from which this recital is taken was later reversed on appeal, and its force as a judgment was thereby destroyed. But we think clearly the recital was competent as an admission against interest, and its exclusion was therefore error.

By a cross-assignment of error appellees complain of the trial court's action in overruling a motion to exclude the testimony of Wootton with reference to the amount of money he received from Jones on the note. The reason which the motion urges for its support is "that it (the evidence) manifestly relates to a transaction with, or statement made by, W. C. Jones, who is now deceased." Appellees state in their brief that they "strenuously objected to the admission of this testimony when offered." There is nothing in the record to support this assertion, and we doubt whether, under these circumstances, the question of the admissibility of this testimony is properly raised. See authorities cited under Tex. S. W. Digest, vol. 22, title "Trial," ☞76. In view of another trial, however, we will give our views upon the question.

The testimony clearly comes within the statute denying to a party the right to testify in relation to transactions and conversations with one deceased; the suit being against the latter's executor. Appellants contend, however, that the testimony was admissible, because Wootton testified to the same effect in the former trial during the life of Jones, and at a time when Jones's testimony was available, if desired, to contradict it. Jones did not in fact testify in the former trial.

[9] While there is much difference of view among the courts upon this particular question, the general rule, which apparently is supported by the weight of authority, is thus stated in 40 Cyc. 2338:

"Where a witness is incompetent to testify because his testimony relates to a personal transaction with a decedent, proof of testimony as to the same matters given by the witness on a former trial at a time when the decedent was alive is not admissible."

[10] Where, prior to his death, the deceased has given testimony which his representatives introduce in evidence, it is generally held, for reasons quite obvious, that the opposing party may testify upon the same subject. Runnels v. Belden, 51 Tex. 48; Parker v. Miller (Tex. Civ. App.) 258 S. W. 602; reversed on another ground (Tex. Com. App.) 268 S. W. 726. And in Marshall v. Campbell (Tex. Civ. App.) 212 S. W. 723, the same rule was applied where statements of deceased were proved by other witnesses.

In the recent case of Shaller v. Allen (Tex. Civ. App.) 278 S. W. 873, the rule was extend-

ed to cases in which the testimony of the deceased had been preserved, and was therefore available, but was not offered, by his representatives. This holding appears to be in conflict with that of Ivey v. Bondies (Tex. Civ. App.) 44 S. W. 916 (writ of error denied). In the last case cited, Chief Justice Finley of the Dallas court, in referring to two cases from Missouri holding the contrary view, says:

"However this may be, that state furnishes the only supporting authority to which we are cited, and it does not seem to be in accord with the decisions of this state, or any other state. so far as we have been able to ascertain."

There is a very full discussion of this subject in Burke v. Horth, 293 F. 408, by federal District Judge Kennedy, wherein it is held, in line with other federal decisions, that in equity cases the testimony of a party taken during the life of the opposing party, who subsequently dies, may be used against the representatives of the deceased.

The statutes which disqualify a party from testifying to transactions and conversations with a decedent whose representatives are parties to the suit has received vigorous adverse criticism from a number of distinguished legal investigators, among them Prof. Wigmore and Prof. Sunderland, as being more productive of injustice than of justice. It is no doubt true that the statute in some cases prevents the establishment of just claims against the estate of a deceased person, and to that extent it works a hardship. Determination of the policy involved in the enactment of the statute, however, is a legislative function, and the plain duty of the courts is to enforce the statute as written, and not seek for exceptions to meet the exigencies of some particular case.

We think the exceptions already engrafted upon the statute by our Texas courts have reached the proper limit of judicial construction.

The clear policy involved in the statute is that of placing the parties to a suit as nearly as possible on a parity. Where one party to a transaction has died, and his evidence is thereby lost, the statute closes the mouth of the other (unless called by his adversary) in regard to their direct personal dealings. Whether this policy be in fact wise or unwise, from the viewpoint of an impartial administration of justice, the Legislature has conceived it wise, and has adopted it. To hold it applicable where the evidence of the deceased has been preserved and actually used by his representatives would be perverting the statute into a weapon of palpable injustice. There is also much force in the reasoning which supports the holding that the statute should not apply where the testimony of the decedent has been preserved and is available to his representatives.

[11] Beyond this, however, we do not think exception to the statute should be extended by judicial construction. The language of the statute disqualifies the party as a witness in every case where his adversary's lips are closed by death. The fact that the case was pending during his life, that his deposition might then have been taken, that there was a trial, and he might have testified, do not, we believe, sufficiently alter the situation to nullify the statute. The fact remains that his testimony is not available to his representatives, and otherwise the case comes within the express letter of the statute. There is a fundamental difference between this case and those in which the testimony of the deceased has already been taken, and his death has not in fact deprived his representatives of it. We hold the witness was not competent, and the testimony upon timely objection should be excluded.

[12] Upon another trial, should appellant's plea of usury be established, appellees will not be entitled to recover interest on their debt, and appellants will not be entitled to have interest payments credited on the principal, for the reason that they have elected to sue for the statutory penalty. Sugg v. Smith (Tex. Civ. App.) 205 S. W. 363.

[13] Upon the homestead issue, appellees have presented several cross-assignments of error complaining of the refusal of special charges and the refusal to submit the issue of estoppel, while appellants urge the insufficiency of the evidence to support the court's judgment in the matter of subrogation to the mechanic's lien upon the property found to be homestead.

The evidence upon the homestead issue was in substance as follows:

On July 14, 1906, Wootton filed with the general land office an application to purchase from the state school fund 1,120 acres in Tom Green county, of which the 200 acres designated in the first deed of trust as his homestead was a part. In this application he stated under oath:

"That I desire to purchase the said land for a home, and that I will in good faith become in person an actual bona fide settler on some portion of the land I purchase within 90 days from the date of my application is accepted, and that I am not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is directly or indirectly interested in the purchase thereof."

He was awarded the land under this application, and made some improvements thereon, moved thereto some of his household furniture, and he and his family lived on the land at various intervals for the succeeding three years.

On November 30, 1909, he and three witnesses made oath, in proof of the occupancy the law requires, that Wootton had erected thereon a three-room dwelling house and other specified improvements during the first

two years after the award; that he had settled on the land in person on November 23, 1906, in good faith making his home thereon, and from that date he "has actually resided upon, and continuously occupied, same as his home in good faith up to and including this date." There was evidence that he and his family were seen living on the land frequently during 'the three-year period covered by the proof of occupancy. To quote from appellees' brief, "Wootton admitted that he had occasionally resided on this school land, but declared that his residence there was only temporary."

Of the funds which Wootton received from Jones as consideration for the note, the evidence shows he paid off a pre-existing mechanic's lien on the property which the jury found to be homestead. This payment was by check of Jones made payable direct to the holder of the lien.

We think the recital in the first trust deed, taken in connection with the facts with reference to the application for purchase, improvement, and occupancy of the school land, was clearly sufficient to raise the issue of estoppel on the part of Wootton and wife to assert, as against the trust deed lien, the homestead character of the property which it covered, and that the trial court therefore erred in refusing appellee's requested issue on that subject.

We have not been cited to any case which rules upon the specific question here presented, and we are not aware that the exact question has been determined in this state. We rest our holding that the evidence raises the issue of estoppel upon general principles now well established under the Texas homestead laws.

[14] Where property is actually occupied as a home, the rule is that neither husband nor wife is estopped to assert its homestead character by designating as homestead other property not so used, coupled with the declaration that the designated, and not the occupied, property is in fact the homestead. The basis of the rule is that the physical facts charge the lender with notice of the homestead character of the occupied property.

[15] On the other hand, where property is not actually occupied as a home, the husband and wife may, by their declarations, estop themselves from asserting its homestead character. Llewellyn v. Bank (Tex. Civ. App.) 265 S. W. 222, and authorities there cited. The reason for this rule is that the homestead character of the property rests in the minds of the owners, and is not disclosed by physical facts which are open to observation; and, therefore, a representation made by them, not inconsistent with the physical facts, intended to be, and actually, relied upon by the lender in making the loan, brings the case clearly within the principles governing estoppel.

[16] A man may have two or more residences at the same time, but he cannot have more than one homestead. Hence, when he occupies as a residence a place in town and another in the country, under such circumstances that either may be his homestead according to his intention, it is evident that the physical facts alone cannot be relied upon as giving notice that either property is homestead as against the other. Clearly there is notice that one of the properties is homestead, and that both are not. It seems to us that such situation when it arises presents a most appropriate case for a homestead designation by the parties who have the right to resolve in their own minds the dilemma which the physical facts, created by their own conduct, present. This situation is closely analogous, if not on all fours, with that in which an excess over the homestead exemption is being occupied for homestead purposes. A designation in such case, made by the husband alone, is held, in the absence of fraud, to be binding on both spouses. Hanes v. Hanes (Tex. Com. App.) 239 S. W. 190. To hold that in the case of two residences, one of which could not, under the law, be claimed as homestead, the owners cannot estop themselves, by designation and representations, as to the homestead character of one of the residences, would deprive the owners of the right to raise money on the property which they have no intention to claim as homestead, and which the law, without such intention, does not invest with the homestead character. We hold that the evidence raised the issue of estoppel, and the request for its submission was erroneously denied.

[17] The trial court correctly ruled that Jones was subrogated to the pre-existing mechanic's lien to the extent that the funds he advanced under the trust deed were used to discharge that lien. The trust deed was given and accepted upon the representation by Wootton and wife that the property was not homestead. If the trust deed is defeated upon successful repudiation of that representation, then clearly we think appellee should be protected by subrogation to the extent that the proceeds of the loan were used to discharge a lien that was valid against the homestead claim.

Appellees have urged several pleas of limitation to the entire cause of action, besides specific pleas to the prayer to recover the penalty provided in the usury statute, and to the claim for rentals as damages for detention of the property sold under foreclosure judgment in the first suit.

[18] All statutory penalties that accrued more than two years before the plea of usury was first filed are barred.

[19] The action to recover rentals did not accrue until the foreclosure judgment was set aside; hence there is no merit in the pleas on this issue.

[20] With reference to the cause of action to set aside the former judgment for fraud,

·the limitation pleas are without merit. The suit was filed by Wootton and wife well within the limitation period. Appellees' contentions in this regard are based upon the hypothesis that the suit against Jones's executor and devisees was an original, independent suit, and that limitation was not tolled until the amended pleading was filed making them parties to the suit; therefore it is urged that, as to them, limitation began to run from the date the original cause of action accrued, or, in any event, from the date the executor qualified.

[21, 22] Where a cause of action survives, and suit has been brought thereon, within the limitation period, the fact that the party who is sued dies pending final adjudication does not in any way affect the status of the cause of action, provided the suit is revived by the statutory method against the executor, or other proper representatives of the deceased defendant. This matter is controlled by express statutory enactment. Article 2080, R. S. 1925. There is no express period of time named in the statute in which the representatives of a deceased defendant must be made parties in order to bind them; but clearly an unreasonable delay would defeat the right of revival by the statutory method. See Hermann v. Fuel Co. (Tex. Civ. App.) 260 S. W. 1094; Weaver v. Shaw, 5 Tex. 286; Beck v. Avondino, 20 Tex. Civ. App. 330, 50 S. W. 207. At the time Jones died, the suit was pending upon appeal, and, under the statutes and decisions of this state. the death of one of the parties had no effect upon the judgment appealed from, whether the cause of action upon which the judgment was based was or was not one which would survive upon death of the defendant. Article 1850, R. S. 1925; Ellis v. Brooks, 101 Tex. 591, 102 S. W. 94, 103 S. W. 1196. As long as that judgment was pending on appeal, new parties could not properly be suggested or made in the trial court, and there seems to be no requirement that this should be done in the appellate courts. Whether there was proper diligence in bringing in the executor and devisees of Jones after the mandate was returned to the district court may depend upon matters which are not shown by the record before us, and for that reason we merely cite the statutes and decisions which will no doubt furnish in this regard a proper guide to the district court upon another trial.

[23] To but one other matter do we think it necessary to call attention. In the general portion of the court's charge under "definitions and explanations" the following appears:

"The burden of proof is upon the plaintiff to establish by a preponderance of the evidence the facts which will enable him to recover."

Appellants objected to, and assign error upon, the giving of this charge.

As an abstract principle of law, the charge appears to be faultless. As a guide to the jury in answering the several special issues, however, it was valueless, since it did not point out what issues were essential to plaintiffs' case. Some of the special issues carried their own instructions upon burden of proof; others, as the four above quoted, did not. But, even if all the special issues had carried specific directions on the subject, the charge quoted would not have been proper. One of the prime purposes of the special issue verdict is to have jury findings on the facts uninfluenced, as far as possible, by the effect of such findings upon the judgment to be rendered in the case. In order to apply a general charge on the burden of proof to the special issues submitted, the jury would of necessity be required to know the effect on the rights of the parties of each issue submitted. In charging on the burden of proof. in a special issue case, we think the proper practice is to point out to the jury where, and not upon whom, the burden of establishing by a preponderance of the evidence lies.

For the errors pointed out, the trial court's judgment is reversed, and the cause remanded to that court for a new trial.

Reversed and remanded.

### On Appellants' Motion for Rehearing.

Appellants in their motion for rehearing, among other matters assigned, request that the trial court's judgment be affirmed in any event in so far as it sets aside the former judgment and proceedings thereunder for fraud, on the ground that no error is predicated upon this branch of the case. We would accede to this request but for the fact that the record is silent, as pointed out in our original opinion, upon whether appellants have been guilty of laches in reviving the suit as to Jones's executor and devisees. Should it appear that the right to revive the suit has been lost by laches, then the original judgment must stand. Since we are reversing the judgment on other grounds, we think it proper under these circumstances to set aside the entire judgment.

The others matters complained of have had our careful consideration, and we are of the view that the motion should be overruled. It is so ordered.

Motion overruled.