Charles A. McCORMICK et al., Appellants,

v.

Miller RHOADES, Appellee.

No. 10950.

Court of Civil Appeals of Texas.

Austin.

May 16, 1962.

Rehearing Denied June 6, 1962.

---

Hornsby & Kirk, Austin, Elgar L. Robertson, Dallas, James R. Sloan, Austin, for appellants.

David L. Tisinger, Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal from a judgment in favor of appellee and against all of the appellants for $40,000.00.

Appellee sued the Executor of the Estate of Charles A. McCormick, herein referred to as Executor, the International Life Insurance Company, herein referred to as Insurance Company and the International Life Operating Company, herein referred to as Operating Company, on an alleged oral contract that on March 27, 1957 McCormick, since deceased, would within a year or eighteen months purchase or cause to be purchased from appellee Rhoades 10,000 shares of the Insurance Company stock for the sum of $60,000.00 and in the alternative Rhoades sued on a written contract dated March 27, 1957, executed only by the Operating Company, under which the Operating Company was given the option of purchasing as many as 10,000 shares at a price of $6.00 per share.

The Insurance Company and the Operating Company answered by general denial and special exception that the Insurance Company is not a party to the alleged written contract and such was void under Article 3.39, Section 4 of the Insurance Code, and in violation of Article 3.67 of the Insurance Code, V.A.T.S.

The Operating Company answered by general denial adopting the special exceptions of the Insurance Company and excepted to the pleading as a whole, alleging that the contract in any event was only an option and that none of the contingencies have ever materialized and such option had never been exercised and plead the Statute of Frauds, etc.

The defendant, Executor, answered by general denial and special exceptions and denied that McCormick was an agent or fiduciary of Rhoades in making any investments, or was acting jointly with either of the other defendants, and that any oral agreement alleged was without consideration and void; that any alleged oral agreement was merged in the written agreement and that plaintiff having accepted the written agreement is now estopped to claim under any oral agreement; that such written agreement was executed as president of the Operating Company and not individually; that such contract was without consideration and that any oral agreement is void under Article 3995(5), Vernon's Ann.Civ.St.

A jury was selected and trial was had but after 24 hours of deliberation, the jury being unable to answer any of the questions submitted, announced that it was unable to agree and was, by the Court, discharged.

Rhoades made a motion for judgment for $40,000.00, which was granted by the Court.

The appellant, Bank as Executor, bases its appeal on the admission of testimony given by Rhoades relating to transactions and conversations with and statements by McCormick, deceased, as being in violation of the Dead Man's Statute, Art. 3716, V. A.C.S., and that the admissible evidence against the Executor was insufficient as a matter of law to establish that McCormick individually made any contract with Rhoades by which it was agreed that McCormick individually was bound to purchase 10,000 shares of stock for $6.00 per share.

This suit was filed October 15, 1958. McCormick died June 15, 1959 and the Executor was substituted as defendant. The trial began on April 10, 1961. Prior to the examination and selection of a jury the Executor presented its motion to instruct as to the effect of Article 3716, which was overruled.

Depositions of McCormick and Rhoades had been taken prior to McCormick's death, neither of which had been filed prior to the trial. McCormick's deposition had not been signed. The Court admitted both depositions only for the purposes of such motion. Neither of the depositions were introduced on the trial. Rhoades was cross examined by counsel for the defendant Companies, to which the Executor objected.

When Rhoades was called to testify the Executor again objected, contending that any testimony as to the transactions with the deceased would violate Article 3716, which objection was overruled.

The allegations of Rhoades was that on or about the 27th day of March, 1957, he and Mr. McCormick agreed that within a year or eighteen months from such date McCormick would purchase or cause to be purchased 10,000 shares of stock from Rhoades for $60,000.00. Rhoades sued in the alternative on a written instrument between him and the Operating Company dated March 27, 1957.

The testimony of Rhoades was to numerous transactions and conversations with McCormick over a period of eight years; that in 1955 or 1956, or prior to March 24 or March 27 of 1956 or 1957, McCormick told Rhoades that he would personally guarantee $6.00 per share for 10,000 shares of stock.

The testimony of Rhoades in the main is:

"Q  At the time this lawsuit was filed, how many shares of stock had you accumulated?

"A  Well, at the time the lawsuit was filed, we was partners on one deal at the Capital National Bank. I think if I had kept the whole deal, it would have been something over 18,000 shares.

"Q  Well, at the time this lawsuit was filed, did you—had you accumulated more than 10,000 shares?

"A  Yes, sir.

"Q  All right. Now, the latter part of 1956 or the first part of 1957, or in that period, what are the facts respecting any conversations between you and Mr. McCormick as to purchase by you of stock and a repurchase figure of $6.00 a share?

"MR. ROBERTSON: Now, if it please the Court, we will object to any oral negotiations concerning the sale of stock by Mr. Rhoades and Mr. McCormick, or to anybody, at $6.00 a share, because the Plaintiff has plead a written memorandum contract that is part of his pleading. This written contract is the sole depository, the agreement between the parties, and it is an attempt to vary and go behind the plain, clear and unambiguous terms of a written contract as plead by the Plaintiff.

"THE COURT: The objection is overruled.

"MR. ROBERTSON: Note our exception.

"MR. HORNSBY: The executor makes a similar objection, Your Honor, and note our exception.

"A  I believe in 1955 at the Directors' meeting which is held in March each year, around March 20th—I could be wrong in the year, either, '55 or '56—it was a special insurance policy put in effect through the International Life Insurance Company, where it had accumulated a value over a period of eighteen months or two years, where they would receive so many shares of International Life Insurance stock for each $1,000.00 worth of insurance that they had, and at the time McCormick went to talking to me about the 10,000 shares of stock, the policy that I have reference to was in force approximately ten months or more, and it was some kind of ruling with the Insurance Commission that he was not allowed to juggle this stock, buy and sell, as he had been in the past. He contacted me to have available 10,000 shares of stock, and he told me before, six months before the Company had a dividend split in stock, that he would guarantee me personally $6.00 a share if I would have him 10,000 shares of stock where he could put his fingers on it at any time that he might need it, because these insur-

ance policies were being sold rapidly, and that the accumulations was beginning to build up, and if the insured would request the stock, they had one or two options to go, but if the insured person requested the stock, McCormick had to have it some place where he could grab it overnight, and I signed an instrument, talking to McCormick as President of the International Life, President of the Western American Insurance Company, President of the— what do you call that other thing? The Stock Company, Operating Company. I was talking to him individually and him only. I didn't know what he was representing. I was dealing with or talking with Charles A. McCormick himself to have this stock available, which I did have.

"Q What did you tell him when you told him that?

"A I told him I would guarantee to have 10,000 shares of stock for him within twelve or eighteen months after the contract was signed.

"Q Now, did he tell you whether he was representing only himself, or any of these Companies, or was anything said about it?

"A No, sir, and I wasn't interested in it. I was talking to Charles McCormick himself, and I knew then and I know now that he wielded the whip. He ruled the roost in all three companies, and didn't anybody do anything unless they got his okay first.

"Q All right, sir. Now about when was it he told you he would guarantee $6.00 a share?

"A Sometime prior to March 24th.

"Q Of what year?

"A 1956, I believe it is, or '57.

*    *.    *    *    *    *

"Q Now, what was its reasonable market value in Austin, Travis County,

Texas, at the time you made demand on Mr. McCormick to pick yours up at $6.00?

"A $2.00 a share, $1.85 to $2.00 a share.

"Q And what was its market value at the time we filed this lawsuit?

"A Probably the same, $2.00.

"Q And what is its market value now?

"A Well, I don't know for sure. $2.00 would be a big price for it."

The written instrument sued on reads:

"THE STATE OF TEXAS
COUNTY OF TRAVIS

"THIS MEMORANDUM OF AGREEMENT, between INTERNATIONAL LIFE OPERATING COMPANY, a Texas corporation with its principal office in the City of Austin, Texas, hereinafter called 'OPERATING COMPANY,' and MILLER F. RHOADES, a resident of Austin, Texas, hereinafter called 'RHOADES,'

"WITNESSETH:

"Operating Company has heretofore issued and will hereafter issue to various insureds of International Life Insurance Company, Austin, Texas, who are holders of the company's Investor's Expansion Plan policy, a contract of agency, a copy of which is attached and made a part hereof, for all purposes; and in consequence thereof Operating Company will be required to purchase from time to time shares of stock of International Life Insurance Company in accordance with its agency agreement.

"Rhoades is the holder of considerable number of the shares of such stock, and has made his independent arrange-

ment for the acquisition of additional shares from time to time.

"Operating Company wishes to have some assurance now of a source from which to purchase up to 10,000 shares contemplated by the agency agreements at the price of $6.00 per share for benefit of its principals in such agreements. Rhoades is willing to make such shares available upon demand from time to time at the price of $6.00 per share.

"IN CONSIDERATION of the premises and mutual undertakings and benefits derived and to be derived, it is therefore agreed between the parties that Operating Company shall have and is hereby given the option to purchase as many as 10,000 of such shares from Rhoades at the price of $6.00 per share, and Rhoades is hereby given the option to sell such shares from time to time to Operating Company at said price of $6.00 per share."

Other witnesses, some of whom were employees of Rhoades, testified as having heard conversations between McCormick and Rhoades to the general effect that McCormick "wanted to buy the stock", "when the stock is split" and "I will guarantee you $6.00."

Since we are remanding this case for a determination by a Court or jury as to the fact issues relative to the Executor's liability, we omit any further discussion of the testimony.

■ We believe that because McCormick's testimony was available through his deposition and Rhoades had the opportunity of cross-examining McCormick on the deposition and did so, he could not have objected to the introduction of the deposition. McCormick & Ray, 723, 739; Lehman v. Howard, Tex.Civ.App., 133 S. W.2d 800, no writ history.

The Executor occupies no better position than did McCormick, when alive. Wootton v. Jones, Tex.Civ.App., 286 S.W.

680, error dism., w. o. j.; Burke v. Horth, 10 Cir., 293 F. 408; Shaller v. Allen, Tex. Civ.App., 278 S.W. 873, no writ history.

■ We are aware of the holding in Ivey v. Bondies, Tex.Civ.App., 44 S.W. 916, error ref. We believe that the Court erred in rendering judgment against the Executor because the evidence was not undisputed that on March 27, 1957 McCormick individually made an agreement to purchase 10,000 shares of stock at $6.00 per share. There were controverted fact issues to be decided by a jury.

■ Special Issues Nos. 1, 2, 3 and 4, requested by Rhoades, were submitted and were not answered. The issues inquired of the jury if McCormick agreed to purchase or cause to be purchased 10,000 shares for the sum of $60,000.00 and if Rhoades agreed that McCormick might purchase the shares at the fixed price stated, and what was the reasonable market value of the stock, and if the Life Insurance Company was acting jointly with McCormick. As stated, the jury could not agree on answers to these issues or any of the 37 other issues submitted.

It is error to instruct a verdict when the evidence raises any material issues. Air Conditioning v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422.

■ Then, a jury is not required to accept the uncorroborated testimony of a party to a suit as such does no more than to raise a fact issue to be determined by the jury. Flack v. First National Bank of Dalhart, 148 Tex 495, 226 S.W.2d 628; Long v. Knox, 155 Tex. 581, 291 S.W.2d 292; Taylor & Son, Inc. v. Arlington Ind. School Dist., 160 Tex. 617, 335 S.W.2d 371, 376.

■ Appellants International Life Insurance Company and International Life Operating Company assign as error the action of the Court in failing to hold as a matter of law that the purported con-

tracts relied on by appellee were illegal and void and in direct contravention and violation of Articles 3.67 and 3.39, Sec. 4, of the Insurance Code, and in holding that McCormick was acting in behalf of the appellants; in holding that there was evidence which would make the appellants a party to the contract relied on by appellee; that the Court erred in holding that the evidence was sufficient to make appellants parties to any contract, written or oral, with appellee and as relied on by appellee; that the Court erred in granting judgment against appellants because the evidence showed that the purported contract between Rhoades and International Life Operating Company was not signed until after March 6, 1958, at which time McCormick was not an officer, director, or in any way connected with appellants; that in any event the purported contract was no more than an option contract and the Court erred in not so holding; in granting a judgment for plaintiff and against appellants because there are disputed issues of fact as to each and all of the claims plead by plaintiff upon which reasonable minds may differ.

We have hereinabove stated the alleged cause of action and briefly the answers of the defendants, have reviewed the evidence and restated a portion, have embodied other portions of the testimony, and we will not again attempt to review the evidence in further detail. We have herein concluded to reverse and remand the case as it affects the Executor and believe that the case should be reversed and rendered in favor of the appellants, the Life Insurance Company and the Operating Company. The contract sued on by Rhoades by its own terms grants the Operating Company *the option* to purchase as many as 10,000 shares of such stock from Rhoades at the price of $6.00 per share.

The testimony of Mr. Rhoades is that he was dealing with or talking with McCormick himself and was not interested in who McCormick was representing and did not pay any attention to International Life, but dealt with McCormick, him, and him only.

It was stipulated that the notary who took the acknowledgment on the memorandum written agreement would testify if present that she back-dated the same. It is undisputed that McCormick sold his interest in the Life Insurance Company in December, 1957 and was not an officer of same at any time during 1958 or subsequent. Mr. Rhoades was a Director of the Life Insurance Company and as such was not permitted to receive any money from the Company in negotiating any purchase or sale by such Company.

Art. 3.67, Insurance Code, reads as follows:

"Director Not to Do Certain Things.— No director or officer of any insurance company transacting business in or organized under the laws of this State, shall receive any money or valuable thing for negotiating, procuring, recommending or aiding in any purchase or sale by such company of any property, or any loan from such company, nor be pecuniarily interested, either as principal, co-principal, agent or beneficiary in any such purchase, sale or loan."

The alleged contracts, oral or written, are in violation of the law and Courts will not grant relief to either of them. Morrison v. City of Fort Worth, 138 Tex. 10, 155 S.W.2d 908; Dallas Farm Machinery Co. v. Minneapolis-Moline Company, Tex. Civ.App., 324 S.W.2d 578; 14 Tex.Jur.2d 408, Sec. 309, pp. 310, 312.

■ The burden of proof was on plaintiff of alleging and proving by a preponderance of the competent evidence his cause of action and in determining whether an instructed verdict should be given, or the Court render a judgment after the jury failed to reach a verdict, all testimony must be construed most favorably to the one against whom such peremptory instructed verdict or judgment is given. McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442.

The judgment of the Trial Court is reversed and judgment is rendered that appellee Rhoades take nothing against appellants International Life Operating Company and International Life Insurance Company and they are each discharged with their costs.

The judgment of the Trial Court is reversed and this cause is remanded for another trial as to the McCormick estate.

Reversed and rendered in part and in part reversed and remanded.