CREOLE PRODUCTION SERVICES, INC., Appellant,

v.

Jimmy L. HARPER, et al., Appellee.

No. A2788.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 12, 1982.

Tom Alexander, Don Fogel, Butler, Binion, Rice, Cook & Knapp, Houston, for appellant.

Harry M. Reasoner, John L. Carter, Vinson & Elkins, Robin C. Gibbs, Wood, Campbell, Moody & Gibbs, Houston, for appellee.

Before BROWN, C.J., and JUNELL and PRICE, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This is an appeal from a judgment entered against appellant, plaintiff below, in a suit involving alleged appropriation of trade secrets. The jury found that the material appropriated by appellee did not constitute trade secrets and, because of a conditional submission, did not answer an issue concerning whether such material was used with knowledge that it constituted trade secrets. The questions presented are (1) whether the fact that the appropriated material constituted trade secrets was proved as a matter of law; (2) whether the jury's failure to find that the material constituted trade secrets was against the great weight and preponderance of the evidence; (3) whether trial counsel for appellees engaged in improper jury argument; and (4) whether material misconduct occurred in the jury room. Finding no reversible error, we affirm.

Creole Production Services, Inc. (Creole or appellant) is in the business of servicing certain large engines and compressors used in the oil and gas industry. Creole's objective is to perform as much of the service as possible on a "turn-key" basis. This means that Creole analyzes a service opportunity and prepares a bid to perform the job within a set amount of time for a fixed fee. Most servicing of this type of equipment by others is performed on a "time and materials" or "cost-plus" basis.

The "Creole process" of "turn-key" bidding involves keeping detailed records on jobs performed. By organizing this information, Creole can estimate the resources needed to accomplish a maintenance or overhaul task for the same or similar equipment. The "Creole process" also involves a determination of the optimum crew size and

a determination of the tools the crew will need. Creole thus attempts to keep expenses to a minimum while providing the customer with a definite time for completion and a predetermined cost of the work.

Creole claims a considerable amount of time and money has been invested in developing its process to a profitable status. The development involved a start-up time during which the historical information was collected. The crew composition and tool list were determined by a trial and error approach. Initially many jobs resulted in a loss.

Jimmy Harper (Harper) was employed as a salesman for Creole until August of 1979. Upon his termination he went to work for Energy Services Corp. (Energy Services), a newly formed subsidiary of Production Operators, Inc. (P.O.I.). During an exit interview his supervisor told him that no company information was to leave with him. Harper exhibited an empty brief case. Creole was unaware of the formation of Energy Services and did not think Harper's new endeavor would involve competition in Creole's market. Actually, Harper was employed to work with a company that would compete with Creole. Harper was extended a 20% equity interest in Energy Services.

After Harper's departure Creole learned that he had given confidential information about Creole's operations and financial position to P.O.I. and that he had taken many internal Creole documents. Creole contends the purpose of these actions was the use of the "Creole process" to compete with it. Creole also alleges that Harper and Energy Services attempted to attract many key Creole employees to become employees of Energy Services.

Creole filed suit and obtained a Writ of Sequestration. Pursuant to an order of the court, constables seized 10,722 pages of Creole documents from the offices of Energy Services and Harper's home. Creole also requested and was granted temporary injunctive relief concerning competition on certain jobs, the contacting of Creole employees, the copying of any Creole data, and any representations that a service similar to Creole's could be offered due to possession of Creole's information.

The appeal before us arises out of the trial on the merits in which Creole claims Harper appropriated trade secrets consisting of the documents sequestered and used them in competition with Creole. Energy Services, P.O.I. and other related companies and individuals were also named as defendants. Creole claims it was damaged because (1) jobs were lost to Energy Services; (2) Creole was required to bid less for the jobs which they did procure because Energy Services' competing bid was developed using the "Creole process"; and (3) salaries had to be raised and management time spent to counsel employees and persuade them to remain with Creole.

After weeks of trial in which Creole presented its case, the defense rested without putting on any evidence and the case was submitted to the jury on special issues. The jury failed to find that Harper appropriated material from Creole that contained trade secrets. Judgment was entered that Creole take nothing. Appeal was perfected to this Court.

In its first two points of error, appellant takes the position that it proved the material taken by Harper constituted trade secrets as a matter of law. Appellee notes the rule that when affirmative findings are required to two or more issues, at least one of which, without objection by the complaining party, is conditioned upon the other and a party makes an attack upon a failure to find affirmatively to the nonconditioned issue on the ground that it was established as a matter of law, he has thereby waived the right to a jury finding on the conditioned issue and that issue is deemed found in favor of the trial court's judgment. Tex.R.Civ.P. 272; *Little Rock Furniture Manufacturing Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 989–90 (1949); *Bell v. Aetna Casualty and Surety Co.*, 394 S.W.2d 830, 833 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.); *Lee v. Howard*, 483 S.W.2d 922, 924 (Tex.Civ.App.–Eastland 1972, writ refused, n.r.e.).

■ A plaintiff has the burden of alleging and proving by a preponderance of the evidence his cause of action. *McCormick v. Rhoades*, 357 S.W.2d 595 (Tex.Civ. App.—Austin 1962, writ ref'd n.r.e.). As a corollary to this rule, a plaintiff must reduce his pleadings and proof to jury findings supporting each element of his cause of action to be entitled to a judgment in his favor. *Dittberner v. Bell*, 558 S.W.2d 527 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). It is incumbent upon the plaintiff in a trade secrets case to show that material constituting trade secrets was appropriated, that such material was used with knowledge that it constituted trade secrets and that damages resulted from the appropriation. *Lamons Metal Gasket Co. v. Traylor*, 361 S.W.2d 211 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). Appellant, by Special Issue No. 1, requested a finding as to whether Harper appropriated documents which constituted trade secrets. In Special Issue No. 2 appellant requested a finding as to whether the material was used with knowledge that it constituted trade secrets. Special Issue No. 2 was conditioned upon an affirmative answer to Special Issue No. 1. The form of the submission was proposed by appellant. No objection or attempt to change the submission was made. We are of the opinion that the rule argued by appellees is an application of the proposition that if a plaintiff does not secure jury findings to support a judgment in his favor, he is not entitled to one. Since appellant has not secured the necessary findings or established them as a matter of law, his points of error one and two are overruled.

■ Appellant filed a motion with this Court requesting the withdrawal of points of error one and two. Once an appeal is perfected and a brief filed by an appellant, we are of the opinion that he should not be allowed to make changes which would materially alter his position on appeal. Therefore, we overrule appellant's motion even though such action does not affect the disposition of the appeal.

■ However, we must review appellant's claim that it is entitled to prevail on the issue of trade secrets. Appellant in his third point of error complains of the jury's answer to Special Issue No. 1 as being against the great weight and preponderance of the evidence. We have reviewed the lengthy statement of facts and hold the jury's answer is not against the great weight and preponderance of the evidence. Appellant placed before the jury 10,722 pages of documents which it claimed contained trade secrets. The portion of the court's charge to the jury which properly instructed the jury on the definition of a trade secret is as follows:

A trade secret may consist of any formula, pattern, device, or compilation of information which is used in one's business and gives him an opportunity to obtain an advantage over competitors who do not know or use it. A trade secret cannot include information that has been disclosed or revealed to the public. The term "trade secret" is not applied to matters of public knowledge, or of common knowledge of a trade, or of general knowledge in an industry. A trade secret must be known only to its owners and those of his employees to whom it is necessary to confide it in order to apply it for the uses for which it is intended.

Appellees established through cross-examination of appellant's witnesses that (1) there is no writing on the documents themselves nor was there a formal written policy indicating that the documents were considered confidential; (2) some of the material could be within the common knowledge of the trade or the general knowledge of the industry; (3) some of the information was disseminated to customers; (4) some of the documents bear the logo of another company and several of the Creole forms are very similar to these; and (5) Harper may have had authorized access to many of the documents at one time or another during his employment. While we cannot condone the taking of the material, we hold the evidence before us clearly shows that a fact issue was presented to the jury and that the jury's answer to Special Issue No. 1 was justified. Therefore, we overrule appellant's third point of error.

In view of our holding concerning point of error three, it is not necessary that we address appellant's points of error four through seven which complain of the jury's findings that $0 would constitute a reasonable royalty for any use of Creole's trade secrets and that $0 damages were sustained by Creole as a result of the appropriation and use of the trade secrets.

 Appellant's eighth point of error contends that counsel for appellees introduced evidence through their argument. The argument complained of concerns statements implying that a verdict against appellees could result in bankruptcy, statements about appellees' mental states and motives, statements explaining why appellees called no witnesses, and statements regarding the advice appellees' counsel would have given Harper at an earlier time. No objections were made to any of the statements. Generally, procedural errors are deemed waived if not objected to at trial. *Otis Elevator Co. v. Wood,* 436 S.W.2d 324 (Tex.1968). However, appellant contends that each incident complained of was "relatively minor", and thus no objection was called for. It is the cumulative effect of the incidents that appellant contends amounts to reversible error. *See Hemmenway v. Skibo,* 498 S.W.2d 9, 14 (Tex.Civ. App.—Beaumont 1973, writ ref'd n.r.e.).

We agree that the argument complained of exceeds permissible boundaries. Such argument can not be justified entirely as invited or provoked by appellant's own argument. However, we hold appellant has failed to sustain the burden of showing that the argument, even cumulatively, constitutes reversibly harmful error. *Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835, 839–40 (Tex.1979); Tex.R.Civ.P. 434. Appellant's eighth point of error is overruled.

 In his ninth and tenth points of error, appellant complains of the argument of appellees' counsel noting the failure to call as a witness any customer characterizing Creole's work as the "Creole process." Appellant claims such argument was a comment on the failure to call witnesses equally available to all parties. While this argu-ment also exceeded permissible grounds and thus does not meet with our approval, we hold the argument does not constitute reversible error. *Standard Fire Insurance Co. v. Reese, supra.* Appellant's ninth and tenth points of error are overruled.

 By point of error number eleven, appellant complains of jury misconduct. Appellant contends the foreperson of the jury and another jury member made statements to the effect that they handled valuable documents in their jobs and regularly took such documents home. Since they did not consider the documents they handled to be trade secrets, they indicated feelings that the documents in this case were not trade secrets either.

[A] party seeking a new trial on the basis of jury misconduct must establish not only that the alleged misconduct occurred, but also that it was material misconduct, and that based on the record as a whole, the misconduct probably resulted in harm to the complaining party.

*Strange v. Treasure City,* 608 S.W.2d 604, 606 (Tex.1980). We hold the statements of the jurors concerned their mental processes and, based on the entire record, probably resulted in no harm to appellant. Appellant's eleventh point of error is overruled.

The judgment of the trial court is affirmed.